## FLEMING, TEMPORARY CONTROLS ADMINISTRATOR, *v.* RHODES, SHERIFF, ET AL.

No. 682.   Argued April 7, 1947.—Decided April 28, 1947.

*Samuel Mermin* argued the cause for appellant. With him on the brief were *Acting Solicitor General Washington, John R. Benney, William E. Remy, David London, Irving M. Gruber* and *Albert J. Rosenthal.*

No appearance for appellees.

MR. JUSTICE REED delivered the opinion of the Court.

This appeal is from an interlocutory order of the District Court of the United States for the Northern District of Texas denying preliminary injunctions. Appellant's predecessor sued certain landlord appellees and the Sheriff and a constable of Tarrant County, Texas, in that United States District Court for an injunction to stop eviction of tenants under state judgments that were recovered by the landlords in suits for restitution of leased property.[1] The state suits were filed by the landlords without the certificates required by the Rent Regulation for Housing to maintain such actions. 8 F. R. 7322; 10 F. R. 11666; 11 F. R. 5824, 8106. The state judgments were entered

---

[1] Jurisdiction of suits for such injunctions is conferred upon the district courts of the United States by § 205 of the Emergency Price Control Act of 1942, 56 Stat. 23, 58 Stat. 632, 59 Stat. 306, and the Price Control Extension Act of July 25, 1946, 60 Stat. 664.

after June 30, 1946, the termination date of the Emergency Price Control Act, and before July 25, 1946, the date of the approval by the President of the Price Control Extension Act. As there was no federal price control statute during this period, these judgments will be treated as valid when granted.

The decision of the District Court, denying the motion as to the landlords and directing the entry of the order, was based on the unconstitutionality, as applied to these state judgments, of that portion of § 18 of the Price Control Extension Act of July 25, 1946, that declared, "The provisions of this Act shall take effect as of June 30, 1946, . . ." [2] This provision the Court thought was unconstitutional (1) because the words affected the state judgments retroactively by bringing them under the Extension Act [3] and (2) because the vested rights, created by the prior judgments in the landlords to obtain restitution of their leased properties, could not be destroyed by subsequent legislation. Apparently it was felt that the due process clause of the Fifth Amendment forbade such regulation of the incidents of judgments. The question is raised as to whether the Act of August 24, 1937, 50 Stat. 751, confers power upon this Court to review, on direct appeal, a ruling against the constitutionality of an act of Congress when the ruling of unconstitutionality is made in the application of the statute to a particular circumstance, as in this appeal, rather than upon the challenged statute as a

---

[2] Price Control Extension Act of July 25, 1946, *supra.*

[3] As this opinion relies upon the validity under the price control acts of the prohibition of future eviction of tenants in § 6 of the Rent Regulation for Housing, 8 F. R. 7322; 10 F. R. 11666; 11 F. R. 5824, 8106, it is unnecessary to consider further whether the mere inclusion of these past judgments within the reach of the price control legislation, by advancing the effective date of the act, is constitutional. Compare *Blodgett* v. *Holden,* 275 U. S. 142, 146, and *Untermyer* v. *Anderson,* 276 U. S. 440, 445, with *United States* v. *Hudson,* 299 U. S. 498.

whole. A reading of the first three sections of the act convinces us that Congress granted litigants in courts of the United States a direct appeal to this Court from decisions against the constitutionality of any act of Congress as applied in the pending litigation.

The first section only authorizes the intervention of the United States in private litigation, "whenever the constitutionality of any Act of Congress affecting the public interest is drawn in question . . . ." [4] It has nothing to do with appeals. The second section allows an appeal to this Court from a final or interlocutory order only when the United States is a party, through the preceding § 1 or originally, and the decision is against the constitutionality of the federal law. It provides for expedition in our determination of the appeal. Section three relates to the allowance or refusal of injunctions staying acts of Congress in whole or in part on the ground of repugnancy to the Constitution, and requires a three-judge court, expedition in determination and notice to the United States. The specific provision for prompt review of judgments granting or denying "in whole or in part" such an injunction is limited to applications for stays of acts of Congress because of their unconstitutionality. Thus the constitutionality of federal acts comes to us by direct appeal, under the Act of August 24, 1937, only when the United States is a party to the litigation below or an injunction is sought. This enables the United States to exercise large discretion, by its determination as to whether or not to intervene, as to what cases are reviewable directly

[4] The last three words were construed in *Dahnke-Walker Co.* v. *Bondurant,* 257 U. S. 282, 288, to allow appeals under Judicial Code § 237 to this Court from final judgments of state courts of last resort upholding the validity of state statutes against a challenge to their application to particular circumstances because of their repugnance to federal law. This was a settled construction for the words. See *Kepner* v. *United States,* 195 U. S. 100, 124.

in this Court.[5]   The Congress intended prompt review of the constitutionality of federal acts.[6]   Since § 1 allows intervention when the constitutionality of an act is "drawn in question" and § 2 allows appeal after intervention, it follows that there is an appeal from an order that invalidates, as unconstitutional, a statute as applied.   To limit the generality of the language of § 2 of the Act of August 24, 1937, to cases that involved only the constitutionality as a whole of the challenged statutes might seriously impair prompt determinations of matters of great public interest.   Litigants may challenge the constitutionality of a statute only in so far as it affects them.[7]   We hold that jurisdiction of the appeal from the challenged order is conferred upon this Court by 28 U. S. C. § 349a.

The Court was also of the view that § 265 of the Judicial Code barred any injunction against the state officials.

The appellant sought injunctions against future eviction of these tenants through writs of restitution or other process by which eviction might be con-

---

[5] *Garment Workers* v. *Donnelly Co.*, 304 U. S. 243, 249–50.

[6] H. Rep. No. 212, 75th Cong., 1st Sess., p. 2:

"The importance to the Nation of prompt determination by the court of last resort of disputed questions of the constitutionality of acts of the Congress requires no comment."

S. Rep. No. 963, 75th Cong., 1st Sess., pp. 3–4:

"The United States is not excluded by the principle thus stated, from drawing the judicial power to its proper assistance either as an original party, or as an intervenor, when, in private litigation, decision of the constitutional question may affect the public at large, may be in respect of matters which by the Constitution are entrusted to the care of the Nation, and concerning which the Nation owes a duty to all the citizens of securing to them their common rights."

[7] *Blackmer* v. *United States*, 284 U. S. 421, 442; *Virginian R. Co.* v. *Federation*, 300 U. S. 515, 558; *Carmichael* v. *Southern Coal Co.*, 301 U. S. 495, 513.

summated. Sections 2 (d), 4 (a) and 205 (a) of the Emergency Price Control Act of 1942, as amended, and Rent Regulation § 6 (a), set out below.[8] Such an injunction is in accord with the administrative Interpretations of

---

[8] Emergency Price Control Act of 1942, 56 Stat. 23, 58 Stat. 632, 59 Stat. 306:

Section 2 (d). "Whenever in the judgment of the Administrator such action is necessary or proper in order to effectuate the purposes of this Act, he may, . . . regulate or prohibit . . . renting or leasing practices (including practices relating to recovery of the possession) in connection with any defense-area housing accommodations, which in his judgment are equivalent to or are likely to result in . . . rent increases, . . . inconsistent with the purposes of this Act."

Section 4 (a). "It shall be unlawful, regardless of any contract, agreement, lease, or other obligation heretofore or hereafter entered into, for any person to . . . do or omit to do any act, in violation of any regulation or order under section 2, . . . or to offer, solicit, attempt, or agree to do any of the foregoing."

Section 205 (a). "Whenever in the judgment of the Administrator any person has engaged or is about to engage in any acts or practices which constitute or will constitute a violation of any provision of section 4 of this Act, he may make application to the appropriate court for an order enjoining such acts or practices, or for an order enforcing compliance with such provision, and upon a showing by the Administrator that such person has engaged or is about to engage in any such acts or practices a permanent or temporary injunction, restraining order, or other order shall be granted without bond."

Rent Regulation for Housing, 8 F. R. 7322, 10 F. R. 11666; 11 F. R. 5824, 8106:

Section 6. *"Removal of tenant*—(a) *Restrictions on removal of tenant.* So long as the tenant continues to pay the rent to which the landlord is entitled, no tenant shall be removed from any housing accommodations, by action to evict or to recover possession, by exclusion from possession, or otherwise, nor shall any person attempt such removal or exclusion from possession, notwithstanding that such tenant has no lease or that his lease or other rental agreement has expired or otherwise terminated, and regardless of any contract, lease, agreement or obligation heretofore or hereafter entered into which provides for entry of judgment upon the tenant's confession for breach of the covenants thereof or which otherwise provides contrary hereto, . . ."

the Rent Regulation.[9]   The properties involved in this litigation were defense-area housing accommodations. There is no suggestion that the heretofore referred to sections of the price control acts and § 6 of the Rent Regulations for Housing do not authorize these legal proceedings. The constitutionality of the price control acts, generally considered, is unquestioned.   *Bowles* v. *Willingham,* 321 U. S. 503.   The sole inquiry for us, at this point, is whether it was erroneous for the district court to refuse to allow the temporary injunction, because to do so would invade the constitutional right of the landlord appellees to retain the fruits of their "vested rights" in the valid judgments.

As the appellant is undertaking to enjoin future eviction of the tenants or lessees, our consideration is not affected by the proviso of § 18 of the Extension Act, set out in the margin.[10]   The retroactive provision of § 18, quoted above

[9] Pike & Fischer, OPA Service, Rent, Interpretations of the Rent Regulation for Housing, § 6–VI, issued July 25, 1946:

"Interpretation 6–VI. Evictions Pending On July 25, 1946.

"The Emergency Price Control Act of 1942, as amended, on July 25, 1946, was extended by striking out 'June 30, 1946' and substituting 'June 30, 1947,' as the expiration date of the Act.   Section 18 provides that the provisions of the Act shall take effect as of June 30, 1946.   In this section a savings clause was inserted for the protection of persons who had acted contrary to the regulation during the interim period between June 30, 1946, and July 25, 1946.   This savings clause provides that no act or transaction occurring between said dates shall be deemed a violation.   As a result any eviction which occurred during the interim period was not a violation of the Act or regulation.   By reason of this the tenant who has been in fact evicted during this interim period receives no protection.   If, however, he is in possession on July 25, 1946, he is entitled to the protection of the eviction provisions of the regulation and it is a violation of the regulation for the landlord on or after that date to attempt to evict by court process or otherwise except in accordance with the provisions of Section 6 of the regulation."

[10] *"Provided further,* That no act or transaction, or omission or failure to act, occurring subsequent to June 30, 1946, and prior to the date of enactment of this Act shall be deemed to be a violation of the Emer-

at note 2, is inapposite for the same reason. It is immaterial whether the state judgments were obtained before or after the effective date of the Extension Act. The effort of the appellant is to enjoin future proceedings for eviction after the acquisition by the landlord appellees through valid judgments of what the district court characterized as "vested rights." Federal regulation of future action based upon rights previously acquired by the person regulated is not prohibited by the Constitution. So long as the Constitution authorizes the subsequently enacted legislation, the fact that its provisions limit or interfere with previously acquired rights does not condemn it. Immunity from federal regulation is not gained through forehanded contracts. Were it otherwise the paramount powers of Congress could be nullified by "prophetic discernment." [11] The rights acquired by judgments have no different standing.[12] The protection of housing accommodations in defense-areas through the price control acts may be accomplished by the appellant notwithstanding these prior judgments. The preliminary injunctions should have been granted.

Only a word need be said as to the contention that § 265 of the Judicial Code forbids an injunction against the execution of state judgments by state officers.[13] A contention

---

gency Price Control Act of 1942, as amended, or the Stabilization Act of 1942, as amended, or of any regulation, order, price schedule, or requirement under either of such Acts: . . ."

[11] *Sproles* v. *Binford*, 286 U. S. 374, 391; *Louisville & Nashville R. Co.* v. *Mottley*, 219 U. S. 467; *Philadelphia, B. & W. R. Co.* v. *Schubert*, 224 U. S. 603; *Calhoun* v. *Massie*, 253 U. S. 170; *Norman* v. *Baltimore & Ohio R. Co.*, 294 U. S. 240, 303–11; *Guaranty Trust Co.* v. *Henwood*, 307 U. S. 247, 259.

[12] *Wright* v. *Union Central Ins. Co.*, 304 U. S. 502, 509; *Paramino Lumber Co.* v. *Marshall*, 309 U. S. 370.

[13] Judicial Code § 265:

"The writ of injunction shall not be granted by any court of the United States to stay proceedings in any court of a State, except in cases where such injunction may be authorized by any law relating to proceedings in bankruptcy."

was made before this Court in similar cases last term that § 265 forbade a federal injunction to stay such proceedings in any court of a state. The argument was not accepted. We thought that § 205 (a) of the Emergency Price Control Act of 1942 created an exception to § 265.[14]   No specific mention was made in these opinions as to whether state officers who were parties in the case could be enjoined. However, we do not see any ground, under § 265 of the Judicial Code, to differentiate as to stays against a sheriff or a constable or stays against the parties to the litigation. We think the District Court had power to stay the sheriff and constable.

*Judgment reversed.*

MR. JUSTICE FRANKFURTER, dissenting.

In considering the scope of our appellate jurisdiction, great weight should be given to the strong policy of the Congress, ever since the Judiciary Act of 1891, to keep the docket of this Court within manageable proportions for the wise disposition of causes by the ultimate judicial tribunal.   That consideration applies also to the few Acts, passed since the creation of the circuit courts of appeals, which allow cases to come here directly from the district court where issues of great public importance, such as the constitutionality of legislation, are at stake.

In *Dahnke-Walker Co.* v. *Bondurant,* 257 U. S. 282, this Court gave an expansive content to review, as a matter of right, of State court judgments where is drawn in question "the validity of a statute."   Our jurisdiction was held to cover review of a finding of unconstitutionality in the application of a statute to a particular situation, though the statute is otherwise left in full force and effect.   While, for the reasons set forth in the dissent of Mr. Justice

---

[14] *Porter* v. *Lee,* 328 U. S. 246; *Porter* v. *Dicken,* 328 U. S. 252; *Bowles* v. *Willingham,* 321 U. S. 503, 510.

Brandeis, I have never been reconciled to the soundness of that decision, I accept it. But I do not feel obliged to extend its scope beyond its requirements.

There is an important difference between review of State court decisions and decisions of the district courts. The latter are subject to review as a matter of course by the circuit courts of appeals. They are not dependent on review by grace through *certiorari,* as would be comparable State decisions except for the *Dahnke-Walker* doctrine. I do not feel myself required by the Act of August 24, 1937, to hold that direct appeal lies to this Court whenever a district court finds unconstitutional an application of a statute to the circumstances of a particular case. It is one thing not to allow final determination of the fate of a federal statute to be delayed until a decision of a district court can go through a circuit court of appeals and then reach this Court. It is quite another thing to bring here directly from a district court every decision indicating unconstitutionality in application, no matter how restricted its incidence. Of course this does not mean that direct review of district court decisions by this Court would be available only for cases that involve "the constitutionality as a whole" of a challenged statute. The Act of 1937 refers explicitly to invalidation "in whole or in part." Although this is made explicit in § 3 of the Act, the scope of direct review here, on the score of unconstitutionality, ought not to be different under different sections of this Act. A direct appeal is called for only when a district court strikes down, in whole or in part, that which Congress has unequivocally written. It is unwarranted when all that is in issue is whether the allowable scope of what Congress has written excludes a particular situation.

The immediate case gives point to these general observations. The incidents of a judgment are not the same

in all the States. The effect of this Act upon judgments in the different States may thus involve consideration of the procedure of a particular State. These are hardly questions of the kind which led to the authorization, by the Act of August 24, 1937, of direct review where a district court's decision "is against the constitutionality of any Act of Congress." 50 Stat. 751, 752.

Nor should it be decisive of this Court's exceptional jurisdiction on direct appeal from the district courts that the Government is the litigant. Like other litigants the Government at times attaches importance to a particular case out of all proportion to the more comprehensive factors that should control this Court's jurisdiction. We cannot be blind to the fact that review here is sometimes pressed in response to commendable administrative earnestness which fails, however, to take fully into account the demands of this Court's business. Moreover, it was not the interest of the Government as such which moved Congress to grant direct appeals from the district courts. By the Judiciary Act of 1925 Congress narrowly confined direct review here of district court decisions regardless of the character of the litigant, and the extension of such review by the Act of 1937 should be strictly confined.

I would dismiss this appeal and remand the case to the Circuit Court of Appeals. See *Oklahoma Gas & Electric Co.* v. *Oklahoma Packing Co.,* 292 U. S. 386, 392, and *Phillips* v. *United States,* 312 U. S. 246, 254.