## FLEMING v. CHAPMAN.

### No. 232, Docket 20553.

Circuit Court of Appeals, Second Circuit.

May 9, 1947.

Samuel Wechsler, of New York City (Sidney S. Stark, Kenneth V. Fisher, Albert W. Clurman, all of New York City, on the brief), for plaintiff-appellant.

Irving M. Berg, of Elmhurst, N. Y. (John F. Blaha, of Elmhurst, N. Y., on the brief), for defendant-appellee.

Before L. HAND, SWAN, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

The Administrator, Office of Temporary Controls, the present chief of price controls,[1] sought an injunction in the District Court under § 205(c) of the Emergency Price Control Act of 1942, as amended, 50 U.S.C.A.Appendix, § 925(c), to restrain the defendant from evicting his divorced wife from housing accommodations in New York City. This appeal is from an order refusing a temporary injunction during the pendency of the action. The circumstances are somewhat unusual. Defendant originally bought the premises in the name of his wife; but while her divorce action against him was pending, he instituted suit in the Supreme Court of New York to have her declared trustee of them for his benefit. She obtained her divorce decree, and he procured a favorable judgment in his action. The latter judgment, entered October 22, 1945, also directed the wife to reconvey and deliver possession of the premises to him. In April, 1946, he obtained an order from the state court directing the sheriff to evict the wife from the premises. In June, 1946, he moved to resettle this order; and she then made a cross-motion to add to the order a provision saving her rights as a tenant under the OPA regulations. His motion was granted; hers was denied; and the resulting order was affirmed by the Appellate Division on her appeal in December, 1946. His attorney then notified her that unless she moved from the premises immediately steps would be taken to evict her. This action followed on January 3, 1947.

■ The District Court refused the injunction on the ground that the relation of landlord and tenant did not exist between husband and wife. The defendant, however, asserts the additional ground of res judicata because of the proceedings had upon the motions to resettle the state court order. But, whether or not a technical res judicata against the Administrator is possible in a case in which he is not a party and has not intervened, it has been made yet more clear than when the District Court rejected this defense that the existence of a valid state court judgment of eviction is no bar to an injunction on behalf of the Administrator in the federal courts even directed against state law-enforcing agents. Fleming v. Rhodes, 67 S.Ct. 1140. This case follows and applies the earlier cases cited by the District Court which had upheld, as against landlords, injunctions to stop eviction by state authority. Porter v. Lee, 328 U.S. 246, 66 S.Ct. 1096, 90 L.Ed. 1199; Porter v. Dicken, 328 U.S. 252, 66 S.Ct. 1094, 90 L.Ed. 1203. These cases now place beyond dispute the principle that a state proceeding to evict is not an "enforcement proceeding" of which the state courts have concurrent jurisdiction with the federal courts under § 205(c), and hence the federal action is not merely paramount, but is the sole proceeding to enforce the Act in the premises.

■ Nor do we think the ground taken by the District Court sustainable. The applicable Rent Regulations for the New York City Defense Rental Area, 8 F.R. 13914, are quite inclusive, and do not rest merely on some formal consensual arrangement of leasing. Compare Pfalzgraf v. Voso, 184 Misc. 575, 55 N.Y.S.2d 171, 173; Da Costa v. Hamilton Republican Club of Fifteenth Assembly Dist., 187 Misc. 865, 65 N.Y.S.2d 500, 503. Thus they define a "landlord" to include a "person receiving or entitled to receive rent for the use or occupancy of any housing accommodations," a "tenant" to include a "person entitled to the possession or to the use or occupancy" of such accommodations, and "rent" to include any "benefit * * * received for or in connection with the use or occupancy of housing accommodations." Id. § 13(a) (8) (9) (10). Here defendant's own acts made it indisputable that the transactions came within these broad definitions. By the divorce decree he was to pay her alimony of $35 per week. Being in default in December, 1945, and threatened with court action, he paid her the arrears and then told her that from then on he was charging her $50 a month rent for the house. So in letters beginning on January 3, 1946, he sent her the alimony, less $50 per month "rent," which he increased to a net of $85 for February and March. Then in March he notified her that "as agreed" he expect-

---

[1] Pursuant to Executive Order No. 9809, 50 U.S.C.A.Appendix, § 601 note, 11 F.R. 14281, upheld in Fleming v. Mo-

hawk Wrecking & Lumber Co., 67 S.Ct. 1129.

ed the house to be vacated on or before April 1, but "if you occupy same after that date the rent will be $100.00 per month which is still below the rental value of the house." He made the deductions at the latter rate for the months of April, May, and June. Thereafter he seems simply to have ceased all payments; and, as she says, she assumed that he was charging her the entire amount of the alimony "as and for rent for the premises."

Under the circumstances it ill behooves him to say that he did not establish her as his tenant. The fact that from time to time he was pressing for the state court judgment settling the ownership of the house does not change this result or allow him to eject his wife without the certificate of permission from the Administrator, Rent Reg. § 6(b) (1), which he in fact never sought. Nor do we see anything inconsistent in her affidavit in the state suit, quoted by him, wherein she said, apparently quite truthfully and at a time when she was contesting his claim, that she had not agreed with him "in so many words" to pay him rent. The qualifying words just quoted are significant. The district judge was of opinion that a temporary injunction would violate "every principle of equity and of common sense." Even so, the law might well require it, as we believe it does. But it does not seem to us equitable or necessarily common sense that a houseowner can receive benefits from an occupant which he himself treats as "rent," and then evict her, contrary to the situation of other houseowners in the city, merely because of the previous relationship he had sustained towards her. The injunction should issue.

Reversed and remanded.