PEDRO CINTRÓN, Plaintiff and Appellee, *v.* MUNICIPAL COURT OF SAN JUAN, FIRST SECTION, Respondent; MIGUEL MARTÍNEZ, Intervener and Appellant.

No. 9441. Argued November 6, 1947.—Decided November 26, 1947.

*Benigno Dávila* for appellant. *Carlos D. Vázquez* and *Arnaldo Cabrera* for appellee.

Mr. Justice Snyder delivered the opinion of the Court.

The plaintiff, lessee of a property used for commercial purposes, sub-leased a portion thereof on a month-to-month basis to the defendant, who is operating a jewelry store therein. In March, 1946, the plaintiff filed an unlawful detainer suit in the municipal court to evict the defendant. After the defendant had filed his answer, on April 2, 1946, the parties stipulated that judgment should be entered in favor of the plaintiff; that the defendant would have five months from April 1, 1946, to vacate the property; that the tenant should continue to pay the same amount he had been paying as rent, and if he failed to do so during the five months, his ouster by the marshal would be ordered forthwith; and that the parties "expressly waive the right of appeal and any other against the judgment . . .". Judgment in accordance with the terms of the stipulation was entered by the municipal court on April 2, 1946.

On August 9, 1946, the defendant filed a motion in the municipal court asking the court to suspend the proceedings in view of § 12 of Act No. 464, Laws of Puerto Rico, 1946 (p. 1326). The municipal court overruled the motion on the ground that the defendant was bound by his stipulation. On certiorari, the district court set aside the order of the municipal court. The plaintiff appealed from the order of the district court.

The appellant first argues that Act No. 464 was suspended in its entirety by the Federal Price Control Extension Act of 1946. There is no basis for this contention. Federal rent control since 1942 has been confined to housing ac-

·commodations. Our holding in *Latoni* v. *Municipal Court, ante,* p. 130, therefore has no application to this case, which involves commercial property.

■ The second error of the appellant is equally without merit. He argues that Act No. 464 does not provide for suspension of proceedings by a lessee against his sublessee. But § 22 defines landlord as including a sublessor and tenant as including a sublessee.

■ In the third error the plaintiff attacks as unconstitutional Act No. 464 as applied to this case on the grounds (1) that it annuls a judgment by giving retroactive effect to Act No. 464 and (2) that it impairs the obligation of contracts.

We find the answer to these arguments in *Fleming* v. *Rhodes,* 331 U.S. 100, 91 L. ed. 998. As the Emergency Price Control Act of 1942 as amended was not in effect between July 1 and July 25, 1946, some state judgments to evict tenants were obtained by landlords during this brief period without the certificates required by the Federal regulations. However, before some of these tenants were actually ousted, Congress on July 25, 1946, enacted the Price Control Extension Act which provided in § 18 that it shall take effect as of June 30, 1946, and that all regulations issued under the Emergency Price Control Act of 1942 as amended shall be in effect in the same manner as if the 1946 Act had been approved on June 30, 1946. See *People* v. *Camacho, ante,* p. 739.

The Federal Administrator thereupon sought injunctions in Federal districts courts to prevent evictions based on these state judgments. The provision of § 18 making·the Federal Act effective as of June 30, 1946, was attacked by the defendant-landlords in these suits as unconstitutional if applied to their state judgments (1) because the state judgments were retroactively brought under the Extension Act and (2) because the vested rights created by the judgments could not be destroyed by subsequent legislation.

In the *Fleming* case the Supreme Court upheld the right of the Administrator to seek such injunctions against these landlords. The court answered the two constitutional arguments by pointing out as to the first point that the restriction on evictions was in the future rather than retroactive. As to the second point concerning the alleged vested rights of the landlords in their judgments, the Court said in 91 L.ed. at 1002:

"It is immaterial whether the state judgments were obtained before or after the effective date of the Extension Act. The effort of the appellant is to enjoin future proceedings for eviction after the acquisition by the landlord appellees through valid judgment of what the district court characterized as 'vested rights.' Federal regulations of future action based upon rights previously acquired by the person regulated is not prohibited by the Constitution. So long as the Constitution authorizes the subsequently enacted legislation, the fact that its provisions limit or interfere with previously acquired rights does not condemn it. Immunity from federal regulation is not gained through forehanded contracts. Were it otherwise the paramount powers of Congress could be nullified by 'prophetic discernment.' The rights acquired by judgments have no different standing. The protection of housing accommodations in defense-areas through the price control acts may be accomplished by the appellant notwithstanding these prior judgments. . . . "

Like the 1946 Federal Act, Act No. 464 is prospective, not retroactive in character, and was properly applied here to prohibit future orders of eviction, and not to judgments already rendered. And as the *Fleming* case makes clear a judgment—whether as a result of litigation or "contract"—cannot operate to bar legislation regulating future action—*i.e.*, evictions which have not yet taken place.

■ In his fourth error the appellant contends that the defendant is estopped from moving for suspension of the proceedings because of his stipulation agreeing to judgment and his waiver of the right of appeal and any other right he might have against the judgment. But a judgment by stipulation or consent under these circumstances is no differ-

ent from a judgment rendered after protracted litigation. The consent to judgment merely obviates the necessity of proof. And the losing party is estopped to deny only what the judgment purports to establish as the facts and law of the case as they exist at that time. See *Myers v. Myers,* 100 S.W.(2d) 693 (Ky. 1936); *Keach v. Keach,* 290 S.W. 708 (Ky. 1927); *Snyder v. Schmoyer,* 104 P. (2d) 612 (Colo. 1940); *Smith v. Smith,* 173 S.W.(2d) 813 (Ky. 1943); *Sidelinker v. York Shore Water Co.,* 105 A. 122 (Me. 1918); 3 Freeman on Judgments (5th ed.) § 1350, pp. 2773-74.

██ We do not stop to determine the effect of Act No. 464 on a consent judgment entered after the effective date of the Act. Here the sublessee consented that judgment be entered against him prior to the date Act No. 464 went into effect for commercial buildings. If that judgment had been the product of a contested case, under the express provisions of § 12 suspending all unlawful detainer proceedings which did not conform to the conditions and terms of Act No. 464, there could be no subsequent order of ouster issued to the marshal pursuant to that judgment. This consent judgment has no higher standing. In both cases the proceedings is not yet closed if ouster has not been ordered and effected. See *Kimmelman v. Tenenbaum,* 50 N.Y.S. (2d) 912, 915 (1944).

Section 12 does not destroy or impair either type of judgment, which remains in effect. It does in substance provide that no future action, including an order of ouster, shall be taken in any unlawful detainer proceeding, unless the complaint conforms or is made to conform with the conditions and terms of Act No. 464. The municipal court was therefore required under § 12 to suspend the proceedings, despite the consent judgment, when the defendant applied therefor on August 9, 1946, after the effective date of Act No. 464 and prior to issuance and execution of an order of ouster.

The plaintiff argues as a part of the fourth error that the Legislature intended that § 12 shall apply only to future, and

not to pending, cases. The language of § 12 shows clearly that it was meant to apply to pending proceedings.

The plaintiff also contends, still as part of the fourth error, that the Legislature did not intend that § 12 shall apply to cases where judgments have already been entered. But there is nothing in § 12 excepting such cases from its terms. Rather the language of § 12 is absolute. Proceedings in all cases, no matter in what state, are suspended. *Font* v. *Echeandía, ante,* p. 224.

■ The plaintiff raises a number of questions in his fifth error. The only point we deem it necessary to examine here is his argument that § 12 vested discretion in the courts to suspend or refuse to suspend this proceeding, and that the district court abused its discretion in ordering suspension. We find nothing in § 12 in support of this contention. Provided a case comes within its terms, it requires suspension of the proceedings, and leaves nothing to the discretion of the court. See *Font* v. *Echeandía, supra.*

■ In his sixth error, the plaintiff renews his attack on the constitutionality of Act No. 464 as applied to commercial buildings. His arguments are not, as in the third error, that the Act is invalid as applied to him because of its allegedly retroactive effect and because of his vested right in his judgment. Here he assails the Act in its prospective effect. It is difficult to disentangle the legal arguments from the abusive language which the defendant directs at this legislation. But the contentions of the plaintiff apparently are that the Act takes his property without due process of law and denies him equal protection of the laws.

A considerable portion of the plaintiff's brief on this point is devoted to the contention that Act No. 464 is unconstitutional insofar as § 12(*f*) limits the right of a landlord to oust a tenant without a lease for a fixed term from housing accommodations in order to occupy them himself or to leave them vacant. Cf. *Latoni* v. *Municipal Court,*

*ante,* pp. 130, 138, footnote 1. That argument has no application in this case, which involves commercial property.

█ The plaintiff also attacks Act No. 464 as unconstitutional because it fails to provide, according to him, that the owner of a commercial building may recover possession from a month-to-month tenant for his own use. Here again the plaintiff, who is a sublessor, has no standing to raise this question against the defendant, his sublessee.

█ As to the issue that Act No. 464 deprives the plaintiff of his property without due process of law, no case has been cited involving a rent control statute for commercial buildings. However, we have no doubt that the Legislature may, under war and post-war conditions when prices are rising unreasonably and building materials are scarce, use the police power to restrict evictions from both dwellings and commercial buildings, provided it also makes provisions for fair and equitable rents. See *Latoni* v. *Municipal Court, supra,* p. 130.

In its "Statement of Motives" in Act No. 464 the Legislature declares that due to the inapplicability of the Emergency Price Control Act of 1942 to commercial buildings and "to the large demand for buildings for commercial . . . uses, numerous landlords have been . . . imposing on their lessees . . . unreasonable . . . contracts; have increased rents up to amounts which in some cases exceed two hundred (200) per cent of the original rent, and are resorting to diverse practices of speculation and of violent ejectment of businesses and industries economically important to the country. These profiteering practices impair the freedom of contract, impose unjustified costs on industry and commerce, to the consequent prejudice of the consuming public, destroy the good will of enterprises, cause damage to the economy of the Island, and affect the welfare, health and security of the people."

It is no longer disputed that rent control of housing accommodations in a period of emergency is valid. *Bowles*

v. *Willingham,* 321 U.S. 503; *Fleming* v. *Rhodes, supra; Miranda* v. *District Court,* 63 P.R.R. 155. And it could perhaps be plausibly argued that similar regulation of commercial buildings is required as an incident to control over housing to avoid diversion of property from housing to commercial use. In any event, rent control of commercial buildings, under the circumstances prevailing in Puerto Rico when Act No. 464 was enacted, is a valid exercise of police power without reference to rent control of housing.

We are in the midst of a post-war emergency. Building materials are scarce, a back-log of long overdue commercial building exists and the forces of inflation are threatening from all sides. These conditions justify legislation to prevent unreasonable increases in rent for commercial buildings and indiscriminate eviction therefrom. Indeed, if such inflationary practices remain unchecked, they will be more acutely felt by the consuming public than the exaction of excessive rent or eviction of one individual from a single house. This is because merchants, forced to pay oppressive rents, will soon pass the burden on to the consumer.

The plaintiff makes a vigorous attack on the wisdom of Act No. 464. That is a matter for the Legislature, not the courts. *Government of the Capital* y. *Executive Council,* 63 P.R.R. 417, 431.

The order of the district court will be affirmed.