SECOND JUDICIAL DISTRICT COURT OF UNION COUNTY.

WALTER BEINECKE, JR., PLAINTIFF, v. JOSEPH TERRANOVA, DEFENDANT.

Decided December 3, 1947.

For the plaintiff, *George S. & Robert A. Sauer.*

For the defendant, *Lester Sandles.*

FULOP, D. C. J. This is a suit for the eviction of a tenant of premises at 56 State Highway 29 in the Township of Hillside.

The parties stipulated that: (a) the landlord obtained a certificate from the O.P.A. prior to July 1st, 1947, permitting the eviction of the tenant for the purpose of converting the property to commercial use: (b) the landlord desires to have possession of the premises in order that he may convert the land for use for an automobile sales and service station.

The landlord says that, if economically feasible, he will move the building and continue its use for dwelling purposes, but does not bind himself to do so. Consequently, that possibility cannot be taken into account in determining the case.

The landlord contends that the O.P.A. certificate became a vested right preserved to him under section 1(b) of the Price Control Act of 1946, 50 *U. S. C. A. Appendix,* § 901(b), which reads as follows:

"(b) The provisions of this Act, and all regulations, orders, price schedules, and requirements thereunder, shall terminate on June 30, 1947, or upon the date of a proclamation by the President, or upon the date specified in a concurrent resolution by the two Houses of the Congress, declaring that the further continuance of the authority granted by this Act is not necessary in the interest of the national defense and security, whichever date is earliest; except that as to offenses committed, or rights or liabilities incurred, prior to such termination date, the provisions of this Act and such regulations, orders, price schedules, and requirements shall be treated as still remaining in force for the purpose of sustaining any proper suit, action, or prosecution with respect to any such right, liability or offense."

It must be noted that the Price Control Act of 1946 did not merely expire. It was replaced by the Housing and Rent Act of 1947, 50 *U. S. C. A. Appendix,* §§ 1881, *et seq.* Section 209A of that act provides: "no action or proceeding to recover possession * * * shall be maintainable by any landlord against any tenant in any court * * * unless * * * " and then sets forth specifically the conditions under

which a tenant may be evicted. One of these conditions is section 209A (a)(4), which reads as follows:

"(4) The landlord seeks in good faith to recover possession of such housing accommodations for the immediate purpose of substantially altering, remodeling, or demolishing them and replacing them with new construction, and the altering or remodeling is reasonably necessary to protect and conserve the housing accommodations and cannot practically be done with the tenant in occupancy, and the landlord has obtained such approval as may be required by Federal, State, or local law for the alterations, remodeling, or any construction planned."

None of the other provisions allowing eviction are applicable to this case and it is upon this provision that the landlord relies.

A reading of the language of section 209 (a) (4), shows that eviction is permitted for the purpose of "protecting and conserving the *housing* accommodations" and not for any other purpose. Congress, in its wisdom, has seen fit to prohibit the removal of tenants for the purpose of converting housing accommodations to commercial use.

It is first suggested that the prohibition in question is so utterly foolish and foreign to the purpose of the Housing and Rent Act of 1947 that the act should not be read as written, but should be construed to mean what it does not say. The court has no power to construe the act contrary to the words used. Nor can it properly be said that the result is so absurd that Congress cannot have intended to mean it. Within the limits of the power of Congress, it is not for the court to say whether or not the provision is wise. That question is solely for the legislative body.

The landlord suggests that this construction results in a deprivation of a vested right of the landlord to evict the tenant. That may well be the case. The mere fact that legislative action abolishes vested rights does not necessarily render the action unconstitutional.

Prior to the establishment of rent control, every landlord had the vested right to remove any tenant at the expiration of his term, to rent his property to whomsoever he pleased

and at whatever rent he pleased. These rights were taken away for the time being and that action has been authoritatively held constitutional. It is a subject of judicial notice that the emergency which created the occasion for the exercise of constitutional power is still with us, for the housing situation is still serious.

With respect to the constitutional question, the United States Supreme Court held in *Fleming* v. *Rhodes*, 331 *U. S.* 100; 67 *S. Ct.* 1140:

"Federal regulation of future action based upon rights previously acquired by the person regulated is not prohibited by the constitution. So long as the constitution authorizes the subsequently enacted legislation, the fact that its provisions limit or interfere with previously acquired rights does not condemn it. Immunity from federal regulation is not gained through forehanded contracts. Were it otherwise the paramount powers of Congress could be nullified by 'prophetic discernment.' The rights acquired by judgments have no different standing. The protection of housing accommodations in defense-areas through the price control acts may be accomplished by the appellant notwithstanding these prior judgments."

The suit will be dismissed.