**COBLEIGH et al. v. WOODS,**
Housing Expediter.

No. 4392.

United States Court of Appeals
First Circuit.

Jan. 26, 1949.

Alvin A. Lucier, of Nashua, N. H., for appellants.

William A. Moran, Sp. Litigation Atty., of Washington, D. C. (Ed Dupree, Jr., Gen. Counsel, and Hugo V. Prucha, Asst. Gen. Counsel, both of Washington, D. C., on the brief), for appellee.

Before MAGRUDER, Chief Judge, WOODBURY, Circuit Judge, and FORD, District Judge.

MAGRUDER, Chief Judge.

Appellants are the owners and operators of an apartment building in Nashua, New Hampshire, and as such had been subject to the Rent Regulation for Housing (8 F.R. 7323) issued under authority of the Emergency Price Control Act of 1942, as amended, 50 U.S.C.A. Appendix § 901 et seq. Under § 4 of the regulation, the rents which were being charged for the twenty-eight apartments in question on March 1, 1942, became the lawful maximum rents, and these maximum rents continued in effect without change up to and including June 30, 1946.

On June 30, 1946, the Emergency Price Control Act, as amended, terminated by its own limitation, Congress having failed to enact legislation for its furthur extension. During the period between July 1 and July 25, 1946, appellants caused to be served upon the tenants notices to the effect that on the next rent date their rents were to be increased $2 per week, which notices were valid under the laws of the State of New Hampshire. During this period July 1 —July 25, 1946, appellants demanded and received from each tenant for the use and occupancy of his respective apartment $2 per week over and above the lawful maximum rent which had been in effect up to the lapse of rent control on June 30, 1946; and appellants continued to demand and receive this additional rent until they were restrained from doing so by interlocutory injunction of the court below on March 12, 1947.

Meanwhile, the Price Control Extension Act of 1946 had become law on July 25, 1946. 60 Stat. 664, 50 U.S.C.A. Appendix, § 901 et seq. Under § 1 of this Act, the Emergency Price Control Act of 1942, as amended, was extended for a year, by striking out the date "June 30, 1946" in § 1(b) of the latter Act and substituting "June 30, 1947". Also, and more important for present purposes, § 18 of the Price Control Extension Act contained the following explicit and unambiguous provision: "Sec. 18. (1) The provisions of this Act shall take effect as of June 30, 1946, and (2) all regulations, orders, price schedules, and requirements under the Emergency Price Control Act of 1942, as amended * * *, and the Stabilization Act of 1942, as amended, which were in effect on June 30, 1946, shall be in effect in the same manner and to the same extent as if this Act had been enacted on June 30, 1946, * * *. Provided further, That no act or transaction, or omission or failure to act, occurring subsequent to June 30, 1946, and prior to the date of enactment of this Act shall be deemed to be a violation of the Emergency Price Control Act of 1942, as amended, or the Stabilization

Act of 1942, as amended, or of any regulation, order, price schedule, or requirement under either of such Acts * * *."

Congress thus made clear in the proviso above quoted that it did not intend the Extension Act to be retroactive in the sense of rendering illegal the receipt of rents which had been lawfully collected during the interregnum period. But apart from that, Congress prescribed that the Rent Regulation for Housing was to be deemed to have remained in effect without interruption as if the Extension Act had been enacted on June 30, 1946, with the consequence that if a landlord had raised his rents during the brief period of no control, such rents, on and after July 25, 1946, were necessarily rolled back, and the lawful maximum rents reverted, to the levels fixed by the regulation in effect on June 30, 1946. The statutory language is crystal-clear, and its meaning is only confirmed by reference to the legislative history. See remarks by Senator Barkley, a member of the conference committee, in explaining the bill on the Senate floor. 92 Cong. Rec. 9812 (1946). The constitutional power of Congress so to provide is none the less effective though it may involve prospective modification of existing agreements between landlords and tenants, valid when made. Fleming v. Rhodes, 1947, 331 U.S. 100, 107, 67 S.Ct. 1140, 91 L.Ed. 1368; Taylor v. Brown, Em.App. 1943, 137 F.2d 654, 659, certiorari denied 1943, 320 U.S. 787, 64 S. Ct. 194, 88 L.Ed. 473.

On October 7, 1946, the Price Administrator (the official predecessor of the present appellee) filed in the court below a complaint against appellants under § 205 of the Price Control Act, as amended, claiming that the landlords had overcharged their tenants an aggregate of $316 for the six-week period July 26–September 7, 1946. The complaint prayed for equitable relief under § 205(a) of the Act by way of injunction against continued violations and an incidental order directing the landlords to refund to the tenants the amounts of the respective overcharges. The complaint also asked for judgment for the plaintiff, on behalf of the United States, in the sum of $948—or three times the amount of the overcharges. In support of this recovery of statutory damages, the complaint set forth that the tenants had failed to institute action under § 205(e) of the Act within thirty days after the dates of the overcharges, and therefore that under the provisions of such subsection the Administrator was authorized to sue for treble damages on behalf of the United States. Since the granting of the full relief thus asked for under these two heads would result in the landlords' being mulcted in fourfold the amount of the overcharges, the Administrator moderated his prayer by the further provision in the complaint that, "if restitution shall be granted by the Court, the prayer for judgment in favor of the Administrator shall be for twice the amount of overcharges."

On January 13, 1948, the court (1) ordered appellants to make restitution to the tenants of the amount of their respective overcharges, which was found to be in the total sum of $328 rather than $316 as alleged in the complaint, and (2) gave judgment for plaintiff, on behalf of the United States, in the sum of $328. This judgment is one of the two now under review in the present consolidated appeal. The other judgment, rendered on the same day, was upon a second complaint against these appellants filed by the Housing Expediter on June 23, 1947. This complaint was in all essentials like the earlier one, except that it alleged overcharges of rent for the period September 7, 1946, to March 12, 1947, not covered by the earlier complaint. It is unnecessary to say anything more about the second complaint or the judgment which was rendered thereon. Our discussion is equally applicable to both complaints.

Though the tenants may fail to institute actions for statutory damages under § 205(e) of the Act, it is nevertheless within the power of a court of equity, under a complaint filed by the Administrator pursuant to § 205(a), to order the landlord to make restitution to the tenants of the amount of the overcharges. This was held in Porter v. Warner Holding Co., 1946, 328 U.S. 395, 66 S.Ct. 1086, 90 L.Ed. 1332; see to the same effect Bowles v. Skaggs, 6

Cir., 1945, 151 F.2d 817; Creedon v. Randolph, 5 Cir., 1948, 165 F.2d 918. Where the Administrator (or his successor, the Housing Expediter) is also entitled to sue for statutory damages on behalf of the United States under § 205(e), he may join in a single complaint requests for appropriate relief both under § 205(a) and § 205(e).

■ It is apparent from the statutory scheme that the maximum liability contemplated by Congress, even of the most willful violator, was three times the amount of the overcharges. It would seem, therefore, that on a complaint filed by the Administrator, the court would not have power to order restitution to the tenant in the amount of the overcharges as an incident of its equitable powers under § 205(a), and at the same time to give judgment to the Administrator, on behalf of the United States, for three times the amount of the overcharges. For this reason we think the Administrator probably was well-advised in asking the court to reduce his recovery of damages under § 205(e) to twice the amount of the overcharges in case the court should grant an order of restitution to the tenants under § 205(a). It might be objected that where the Administrator is entitled to sue for statutory damages under § 205(e), the Act provides that the whole of the recovery goes to the United States, and that therefore it would be improper to divert part of this recovery to the tenants in the guise of a restitution order under § 205(a). But if the result seems odd, it is still, we think, a logical consequence of the holding in Porter v. Warner Holding Co., 1946, 328 U.S. 395, 66 S.Ct. 1086, 90 L.Ed. 1332.

■ Section 205(e) provided that the amount of damages awarded thereunder "shall be the amount of the overcharge or overcharges if the defendant proves that the violation of the regulation, order, or price schedule in question was neither willful nor the result of failure to take practicable precautions against the occurrence of the violation." Suppose the defendant had proved to the satisfaction of the court that his violation was not willful nor the result of failure to take practicable precautions. Might the court nevertheless have awarded judgment to the Administrator under § 205(e) in the amount of the overcharges, and at the same time, under § 205(a), have ordered restitution of the overcharges to the tenants? We doubt it very much, but the point need not be decided in the case at bar, since we have concluded that on the facts the district court properly held that appellants had failed to prove that their violation of the regulation "was neither willful nor the result of failure to take practicable precautions against the occurrence of the violation." As pointed out above, under the Act and the regulation, it was no longer lawful for appellants, after the Price Control Extension Act of 1946 was approved, to continue to demand the $2 a week increase in rent which they had put into effect during the interregnum period. Notwithstanding that the provision of law was unambiguous, and that appellants' obligation thereunder was called to their attention by local officials of the OPA shortly after the Extension Act was passed, they continued to demand and receive the extra $2 a week from the tenants until restrained by interlocutory injunction on March 12, 1947.

Whether the $2 per week increase was "reasonable" or not in relation to the rents generally prevailing for comparable housing accommodations on the maximum rent date was not properly an issue before the district court. Under the regulation the maximum rents for appellants' apartments remained frozen at the rents which were being charged on March 1, 1942, unless and until changed by order of the Administrator. Perhaps appellants might have been entitled to administrative relief under one of the adjustment provisions of the regulation. At any rate they could have filed a protest against the regulation as applied to themselves, under § 203(a) of the Act. Jurisdiction to pass upon the validity of the regulation was vested exclusively in the Emergency Court of Appeals by § 204(d) of the Act. The district court in the case at bar therefore properly rejected an offer of proof by appellants that the freeze-date rents "were abnormally low" and that the

$2 per week increase brought the rents to a reasonable level in comparison to other rents for similar facilities in the area.

The judgments of the District Court are affirmed.