## UNITED STATES v. ASHER.

### No. 5885.

United States District Court
W. D. Missouri, W. D.

May 12, 1950.

258

Joseph E. Babka, Regional Attorney for Office of Housing Expediter, St. Louis, Mo., for plaintiff.

Hershel H. Goodman, Kansas City, Mo., for defendant.

REEVES, Chief Judge.

There is a single question presented by this record. Counsel for the plaintiff succinctly states the question: "Does Congress have the right in the exercise of its war powers to impair existing contracts?"

By the Agreed Statement of Facts it is admitted that the court has jurisdiction of the subject matter and the parties. The defendant is the owner of property designated as Roanoke Apartments, located at 3687 Summit Street, Kansas City, Missouri, and the apartment in question designated as Apartment No. 24.

On December 16, 1948, the defendant leased said apartment to one W. P. Moreland for a period of one year beginning January 1, 1949, and ending December 31, 1949, at a monthly rental of $60 per month. At the time this lease was executed and until the first of April, 1949, the property admittedly was decontrolled property and therefore the lease was validly executed and the defendant was entitled to enforce its provisions unless modified by a Congressional Act which resumed control over housing accomodations and over this particular property. It is the contention of the defendant, through counsel, that the Housing and Rent Act of 1949, 50 U.S.C.A. Appendix, § 1881 et seq., "or that part of it which seeks to abridge retroactively the free right of contract" is unconstitutional. The question has been decided.

■ 1. The constitutional validity of the Rent Control Act has been repeatedly upheld as a war power act. As is well known, the war power act is in its nature a police power, and police power in its final analysis, is nothing more nor less than the power to govern and in all cases where a matter is affected with a public interest a sovereign is authorized to exercise the police power. Such power is incapable of exact definition, but the existence of it is essential to every well ordered government. This is so for the reason that the police power of a state is that power which is necessary for its preservation and without which it cannot serve the purpose for which it was formed. As has been well said, the police power of a state may be shortly defined to be the power of the legislature to make such regulations relating to personal and property rights as appertain to the public health, the public safety, and the public morals. These principles are so well known that it is unnecessary to cite the authorities.

■ 2. The Supreme Court of the United States as well as the appellate courts have repeatedly said that while the "shooting war" in which we were recently engaged is over, yet the effect of the war is imminent and present in our economy. In the very late case of Ludecke v. Watkins, 335 U.S. 160, loc. cit. 171, 68 S.Ct. 1429, 1434, 92 L.Ed. 881, the Supreme Court, in discussing the alien enemy act, said: "Is the statute valid as we have construed it? The same considerations of reason, authority, and history, that led us to reject reading the statutory language 'declared war' to mean 'actual hostilities,' support the validity of the statute. The war power is the war power. If the war, as we have held, has not in fact ended, *so as to justify local rent control*, a fortiori, it validly supports the power given to the President by the Act of 1798 [50 U.S.C.A. § 21] in relation to alien enemies." (Emphasis mine.)

■ 3. It is the contention of the defendant that the government is seeking to enforce a retroactive operation of the statute. An inspection of the pleadings does not disclose such a purpose. The complaint alleges: "That the Defendant demanded and collected the sum of $60.00 per month from W. F. Moreland as rental for the premises aforesaid from April 1,

1949 to June 1, 1949, whereas the maximum legal rent for said housing accomodations was $37.35 per month resulting in an overcharge of $45.30."

It appeared from the evidence that the tenant declined to pay the $60 on June 1, 1949, and because of such refusal the defendant brought a suit for an eviction and the plaintiff seeks to restrain or enjoin the continuance of said suit. It will be seen, therefore, that the action operates prospectively and not retroactively.

■■ In the case of Fleming v. Rhodes, 331 U.S. 100, 67 S.Ct. 1140, 1144, 91 L.Ed. 1368, the Supreme Court very definitely said as appears from the third syllabi of the opinion: "Federal regulation of future action based upon rights previously acquired by the person regulated is not prohibited by the Constitution, even though such rights were acquired by judgments."

To use the exact language of the court: "So long as the Constitution authorizes the subsequently enacted legislation, the fact that its provisions limit or interfere with previously acquired rights does not condemn it."

In like manner, it was held in Cobleigh v. Woods, 1 Cir., 172 F.2d 167, loc.cit. 169: "The constitutional power of Congress so to provide is none the less effective *though it may involve prospective modification of existing agreements between landlords and tenants, valid when made.*" (Emphasis mine.)

These opinions are in harmony with the famous Slaughter House cases with which all of us are familiar. Where public safety and welfare, as well as peace and health are involved, the sovereign may abridge, abrogate, impair, or even destroy property.

■ It would follow that the plaintiff is entitled to judgment as prayed, save only that such judgment or decree shall be for the amount of the overcharge and not for treble damage. The pleadings and the evidence disclose that the defendant believed that there existed a real defense and lawful justification for his acts, and for that reason he should not be penalized.

The plaintiff will prepare and submit an appropriate decree.