In re James H. BROWN, III, and wife Linda Kay Brown, Debtors.

James H. BROWN, III, and wife, Linda Kay Brown, Plaintiffs,

v.

TERMPLAN AND U. S. CREDIT LIFE, Defendants.

In re Charles Earl KUYKENDALL and Sandra Ann Kuykendall, Debtors.

Charles Earl KUYKENDALL and Sandra Ann Kuykendall, Plaintiffs,

v.

MANSFIELD STATE BANK, Defendant.

Bankruptcy No. 479–00363.
Adv. No. 480–0001.
Bankruptcy No. 480–00207.
Adv. No. 480–0111.

United States Bankruptcy Court,
N. D. Texas,
Fort Worth Division.

Dec. 3, 1980.

David R. Casey, Hurst, Tex., Harry L. Cure, Jr., Ft. Worth, Tex., for plaintiff.

Robert M. Warner, Dallas, Tex., Bruce W. McGee, Fort Worth, Tex., for defendant.

Anthony Vaughn, Asst. U.S. Atty., Fort Worth, Tex., Richard L. Levine, Director and Counsel, Dept. of Justice, Washington, D.C., for intervenor, the United States.

JOHN FLOWERS, Bankruptcy Judge.

## MEMORANDUM OPINION

The issue in these cases concerns the constitutionality of § 522(f)(2)(A) of the Bankruptcy Code. Termplan holds a nonpossessory, nonpurchase–money security interest in the debtors' household furnishings and appliances which attached between the enactment date of the Code (November 6, 1978) and the effective date of the Code, (October 1, 1979). Mansfield State Bank holds a nonpossessory nonpurchase–money security interest in the debtors' household furnishings and appliances which attached before the enactment date of the Code. The debtors, plaintiffs, in this action, seek to avoid the security interests under 11 U.S.C. § 522(f) which provides in pertinent part:

> (f) . . . the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is____
>
> (1) . . .
>
> (2) a nonpossessory, nonpurchase–money security interest in any____
>
> (A) household furnishings, household goods . . . appliances . . . that are held primarily for the personal, family, or household use of the debtor . . .

The Defendants assert that § 522(f) of the Code is unconstitutional because (1) it impairs a voluntary contractual arrangement with the Plaintiffs, and (2) it deprives them of property without due process in contravention of the Fifth Amendment. Defendants also assert that § 522(f) was not intended to apply retroactively to liens in existence prior to enactment date of the Code.

## IMPAIRMENT OF CONTRACTS

The Bankruptcy Code was promulgated pursuant to Congress' Constitutional authority to establish bankruptcy laws. U.S.Const. Art. I, § 8. Legislation concerning the debtor's exemptions is a legitimate exercise of this power, *Hanover National Bank v. Mosyes*, 186 U.S. 181, 22 S.Ct. 857, 46 L.Ed. 1113 (1902). The constitutional prohibition against passing a law impairing contractual obligations applies only to states, not to Congress. U.S.Const. Art. I, § 10. All contracts are subject to Congress' power to legislate concerning bankruptcy which is impliedly a part of all contracts, *Wright v. Union Central Life Ins. Co.*, 304 U.S. 502, 85 S.Ct. 1025, 82 L.Ed. 1490 (1938).

## DUE PROCESS

The section in issue is part of a general statutory scheme affecting the rights and duties between private citizens arising out of consumer and commercial contracts. As such it falls within the characterization of economic regulatory legislation. When such legislation is challenged as violative of substantive due process, the Court's function "is to determine in each case whether circumstances vindicate the challenged regulation as a reasonable exertion of governmental authority or condemn it as arbitrary or discriminatory." *Nebbia v. New York*, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940 (1934).

Since 1935, the standards by which the Supreme Court has scrutinized economic regulatory legislation have become increasingly deferential. Comparing two opinions handed down on May 27, 1935, *Schecter Poultry Corp. v. United States*, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570 (1935), and *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935), with two opinions handed down on March 27, 1937, *West Coast Hotel Co. v. Parrish*, 300 U.S. 379, 57 S.Ct. 578, 81 L.Ed. 703 (1937), and *Wright v. Vinton Branch of the Mountain Trust Bank*, 300 U.S. 400, 57 S.Ct. 556, 81 L.Ed. 736 (1937), reveals that the Court in 1937 upheld legislation very similar in substance to legislation held un-

constitutional in 1935. Further evidence of the modern deferential posture is found in *United States v. Carolene Products Co.*, 304 U.S. 144, 58 S.Ct. 778, 82 L.Ed. 1234 (1938) where the Court stated "the existence of facts supporting the legislative judgment is to be presumed, for regulatory legislation affecting ordinary commercial transactions is not to be pronounced unconstitutional unless ... it is of such a character as to preclude the assumption that it rests on some rational basis." *Carolene* at 152, 58 S.Ct. at 783. The contemporary position of judicial inquiry into economic regulatory legislation was aptly summarized by Justice Black in *Ferguson v. Skrupa*, 372 U.S. 726, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963), "We refuse to sit as a superlegislature to weigh the wisdom of legislation."

Several courts nonetheless have ruled that § 522(f) of the Code is violative of due process by relying on the *Radford* decision, supra; see *Rodrock v. Security Industrial Bank*, 3 B.R. 629 (Bkrtcy.Co., 1980); *In re Hoops*, 3 B.R. 635 (Bkrtcy.Co., 1980). These decisions reason that Radford has not been expressly overruled and therefore remains the controlling authority. In *Radford*, the Court struck down portions of the Frazier–Lemke Act which permitted farm mortgagors to scale down indebtedness owing to mortgagees and impaired the mortgagees foreclosure rights. *Radford*, however, should not be looked at in isolation but rather considered in the context of the historical development of substantive due process.

█ In reviewing the constitutionality of § 522(f) of the Code, I have decided to follow the deferential mode of inquiry into the reasonableness of the legislation mandated by the more recent Supreme Court decisions. The test to be applied is whether the lien avoidance powers granted by § 522(f) bear a rational relationship to a legitimate legislative objective. This legislation passes that test. In exercising its power to pass legislation concerning bankruptcy, Congress enacted § 522(f) for the legitimate purpose of aiding the debtor in obtaining a "fresh start" and eliminating

any unfair advantage a creditor might have to coerce the debtor into making payment by threatening to foreclose on household items with little resale value but high replacement cost. H.R.Rep. No. 595, 95 Cong., 1st Sess. 126 (1977), U.S. Code Cong. & Admin. News 1978, p. 5787. The Report of the Commission on the Bankruptcy Laws of the United States, H.R.Doc. No. 93–137, 93d Cong., 1st Sess., (1973) at page 173 explains the genesis of § 522(f):

> The Commission recommends that the federal exemption policy not be frustrated by consensual waivers. A creditor should be allowed to prevail over the allowable exemptions only if security is taken. What is often an unknowing or uninformed surrender of exemption rights should no longer be countenanced under the federal bankruptcy law. And in recognition of the possibility that creditors will simply obtain security, both as to existing and after–acquired assets, rather than rely on waivers, the Commission recommends that nonpurchase–money security interests in wearing apparel, household goods, and health aids be unenforceable against property allowed to the debtor as exempt.

Obviously, the provisions of the law in question are rationally related to the legitimate legislative goal of enhancing the debtor's chances for a fresh start. I hold that § 522(f) of the Bankruptcy Code is not violative of the due process clause of the Fifth Amendment.

*RETROACTIVE APPLICATION*

█ Federal legislation affecting vested rights acquired prior to the enactment of the legislation is not prohibited by the Constitution, *Fleming v. Rhodes*, 331. U.S. 100, 67 S.Ct. 1140, 91 L.Ed. 1368 (1947). "So long as the Constitution authorizes the subsequently enacted legislation, the fact that its provisions limit or interfere with previously acquired rights does not condemn it," *Fleming* at 107, 67 S.Ct. at 1144. The concept of retroactive application of a statute is often elusive, and it is by no means clear that the application of § 522(f) to the Defendants liens is retroactive. See *Reynolds*

*v. U.S.*, 292 U.S. 443, 54 S.Ct. 800, 78 L.Ed. 1353, which held that "a statute is not rendered retroactive merely because the facts or requisites upon which its subsequent action depends, or some of them, are drawn from a time antecedent to the enactment."

As the constitution does not prohibit legislation affecting prior rights, the issue to be decided is whether Congress intended § 522(f) to apply to liens already in existence on the effective date of the Code. This statutory construction issue also could be raised in the context of other Code sections which affect rights that may have existed prior to the effective date, see for example 11 U.S.C. §§ 1129, 1141, 1325, 1327. § 522(f) is silent as to whether it was intended to apply to liens in existence on the effective date of the Code. Nevertheless, I find that § 522(f) was intended to apply to liens in existence on the date the Code became effective, as well as to liens which attach subsequent to the effective date of the Code. Such a statutory construction is consistent with Title IV of Pub.L. 95–598. Title I of Pub.L. 95–598 was effective October 1, 1979 (Title IV § 402). The prior Bankruptcy Act was repealed effective October 1, 1979 (Title IV § 401). The savings provision (§ 403) makes clear that cases commenced prior to October 1, 1979, would be conducted according to the Bankruptcy Act, with the substantive rights in connection with any such case to be conducted as if the Bankruptcy Code had not been enacted. Proceedings initiated on and after October 1, 1979, are to be governed by the Bankruptcy Code without reference to when creditors claims (secured or unsecured) arose. A construction of Title IV which permits application of the Bankruptcy Code only to creditor's claims arising after October 1, 1979, would result in an absurd application of the entire statute in issue here. It is inconceivable that Congress intended debts accruing before October 1, 1979, to be non–dischargeable by debtors who filed on or after that date. Consequently I find that the debtors in both cases may void the nonpossessory, nonpurchase–money security interests held by the defendants.