## Stevick v. Cowan & Cowan, Inc.

*Julian W. Barnard*, for plaintiff.

*High, Swartz, Childs & Roberts*, for defendant.

CORSON, J., July 27, 1954.—This is an action in assumpsit by tenant to recover from his landlord's agent treble damages for rent paid in excess of the maximum under the Federal Housing and Rent Act of June 30, 1947, 61 Stat. at L. 193, as amended, 50 U. S. C. appendix, §§1881, et seq., and to recover reasonable attorney's fees and costs. The action was instituted on July 1, 1953, against Cowan & Cowan, Inc., the landlord's agent, hereinafter referred to as defendant. Defendant filed an answer which contained new matter. Richard R. Stevick, hereinafter referred to as plaintiff, filed a reply to this new matter, which was followed by plaintiff's motion for partial judgment on the pleadings. Subsequent thereto defendant filed his motion for judgment on the pleadings.

Pennsylvania R. C. P. 1034, pertaining to judgment on the pleadings, allows the court to enter "such judgment or order as shall be proper". Therefore, we may dismiss the action in its entirety as urged by defendant or grant a partial judgment as requested by the plaintiff. Pennsylvania R. C. P. 1034 permits the court to enter judgment regardless of which party files the motion, if such is warranted by the pleadings. For this reason, we shall consider the matter solely on the basis of defendant's motion since it is the more general one and will permit us to dispose of the present issues.

The premises with which this action is concerned is known as 403½ Bethlehem Pike, Ambler, Pa., and consists of a second-floor apartment. At the time the original Emergency Price Control Act of 1942 came into effect, the property was owned by one Lewis J.

Mathias, who sold the same to Louise Ann Fritchey and Grace F. Antonio. From the time of their acquisition of the property, the last named joint owners have been represented by defendant as their real estate agent. From March 1, 1946, until January 10, 1949, the premises in question were not rented but were occupied by the owner or the immediate family of the then owner. On February 1, 1949, defendant, as agent for the present owner, rented the premises for $90 per month for a period of one year.

Prior to the first tenancy and during the ownership of Mathias, the premises had been registered under the provisions of the Emergency Price Control Act of 1942, but due to the fact that the premises in question were not rented between April 1, 1946 and January 10, 1949, under the provisions of the Housing Act of June 30, 1947, 61 Stat. at L. 193, as amended, the premises were decontrolled. On January 4, 1949, Mathias was advised of the decontrol by the Office of Housing Expediter. The opinion of the Office of Housing Expediter was based on the then existing statute, the Housing and Rent Act of March 30, 1948, 62 Stat. at L. 93, 50 U. S. C. Appendix §§1881 et seq., which provided, inter alia (§1894):

"No person shall demand, accept, or receive any rent for the use or occupancy of any controlled housing accommodations greater than the maximum rent established under the authority of the Emergency Price Control Act of 1942, as amended . . . and in effect with respect thereto on June 30, 1947."

The Act of 1948 contained a further provision exempting certain property from control, similar to the provisions which were contained in the Act of 1947. Insofar as material, this provision exempted those housing accommodations which:

"(3) (B) . . . for any successive twenty-four month period during the period February 1, 1945 to the date

of the enactment of the Housing & Rent Act of 1948, both dates inclusive, were not rented (other than to members of the immediate family of the landlord) as housing accommodations": 50 U. S. C. Appendix §1892(c)(3).

On March 1, 1951, plaintiff rented the apartment from defendant, as agent, and occupied the same until February 28, 1953. The rental agreed upon was $77.50 per month. Subsequently, defendant was notified that the apartment had been recontrolled by virtue of the 1949 amendment to the Housing and Rent Act of 1947, and he was requested by the Office of Rent Stabilization to register the housing accommodations. Defendant filled out the necessary forms and stated therein that the housing accommodations were first rented at a rental of $90 per month as of February 1, 1949. The maximum rent was thereby fixed at $90 per month. On December 2, 1952, defendant received notice from the area rent director that the maximum rent was to be reduced from $90 per month to $60 per month. After a hearing on the proposed reduction, the Office of Rent Stabilization issued an order dated January 9, 1953, fixing the maximum rent at $60 per month, effective "next payment date". Soon thereafter, on May 15, 1953, after plaintiff had moved from the premises, the Office of Rent Stabilization canceled the registration, made by the defendant in October of 1952, for the reason that the premises had been previously registered at a maximum rental of $40 per month under the Emergency Price Control Act of 1942.

Defendant's principal contention is that the Housing and Rent Act of June 30, 1947, as amended, section 202(c)(3)(B), 50 U. S. C. appendix, §1892 (c)(3)(B) decontrolled the premises in question and that upon recontrol the rent ceiling should be the first rental charged after decontrol, to wit, $90 per month.

As authority for this view defendant cites section 203(*b*)(2) of the Act of March 30, 1949, which provides:

"In any case in which a valid written lease with respect to any housing accommodations was entered into and filed in accordance with the provisions of this sub-section (b) as then in effect, and such lease was in effect on the effective date of the Housing and Rent Act of 1949, such housing accommodations shall be subject to the provisions of this title and, until such lease terminates or expires, the maximum rent for said accommodations shall be the rent set forth in said lease."

Defendant reasons that since the apartment was being leased at $90 per month on the effective date of the Act of 1949, the maximum rent would be the rent fixed in the lease. That the Act of 1949 did have the legal consequence of reverting the maximum legal rent to $40 per month as established under the Emergency Price Control Act of 1942, as amended, has been determined by the decisions of both the Federal and State courts. The contention that the Act of 1949 would be an ex post facto law or would impair the right of contract has also been rejected by the Supreme Court of the United States. In Fleming v. Rhodes et al., 331 U. S. 100, 107, the Supreme Court said:

"Federal regulation of future action based upon rights previously acquired by the person regulated is not prohibited by the Constitution. So long as the Constitution authorizes the subsequently enacted legislation, the fact that its previous provisions limit or interfere with previously acquired rights does not condemn it. Immunity from federal regulation is not gained through forehanded contracts. Were it otherwise the paramount powers of Congress could be nullified by 'prophetic discernment'."

That Congress had the power to protect housing accommodations and to fix maximum rents by means of price control legislation is unquestionable and has been established by a long line of cases and the citation of authorities, we feel, is unnecessary. Therefore, since Congress had the power to regulate, it has not impaired the right of contract nor is this an ex post facto law.

Defendant further maintains that the proper interpretation of the statute clearly indicates that Congress did not intend to recontrol those housing accommodations which were free from control by the Housing and Rent Act of 1947, as amended, supra. The courts have answered this contention adversely to plaintiff: United States v. Earl Holding Co., D. C., 88 F. Supp. 1000; United States v. Friedman, D. C., 89 F. Supp. 957; United States v. Asher, D. C., 90 F. Supp. 257.

A very excellent discussion of the various congressional committee reports showing the true intent of Congress in enacting the Act of 1949 can be found in Dunlap v. Navarro, 326 Mass. 700, 96 N. E. 2d 397. In that case a lease was in effect at the time of enactment of the Act of 1949 and the court held that the maximum rent nevertheless was the rent fixed under the Emergency Price Control Act of 1942, as amended. The court said, at page 704:

"It is therefore plain that Congress intended to recontrol by the Act of 1949 housing accommodations which had not been rented during a twenty-four month period after February 1, 1945."

The same conclusion was reached by the New York courts in Bona v. Tabone et al., 103 N. Y. S. 2d 432 (1951), and Blum v. Golden, 95 N. Y. S. 2d 47.

We have been unable to find any case in Pennsylvania which has passed upon this precise question. However, on the authority of the above cited cases,

and from a careful reading of the Act of 1949, we are of the opinion that the maximum rent on the premises in question during the term of the lease, March 1, 1951, to March 1, 1953, was the maximum rent established under the Emergency Price Control Act of 1942, that is, $40 per month.

Since we have determined that judgment on the pleadings should be entered in favor of plaintiff, the question of the amount of damages must now be resolved. The Act of 1949, sec. 205, 50 U. S. C. Appendix §1895, provides that the tenant may recover either the amount of the excess over and above the maximum rent plus attorney's fee, costs and liquidated damages in the amount of $50, or three times the amount of the excess, provided:

"That the amount of such liquidated damages shall be the amount of the overcharge or overcharges if the defendant proves that the violation was neither willful nor the result of failure to take practicable precautions against the occurrence of the violation. Suit to recover such amount may be brought in a Federal, State or Territorial court of competent jurisdiction *within one year after the date of such violation.*"

At present we need not consider the issue of treble damages as that is a factual question that can only be resolved at the time of trial. However, plaintiff strongly urges that he is entitled to the overcharge for the entire term of the lease, March 1, 1951, to March 1, 1953, rather than the amount of overcharge computed from one year prior to the commencement of the action, July 1, 1953, which amount would be $282.50, plus attorney's fees and costs.

The issue clearly and simply stated is when did the violation occur. The general rule is that the violation occurs at the time the overcharge is made and damages are limited to a period of one year from the date action

was instituted: Ambers et ux. v. Girondo, 69 D. & C. 15; Slater v. Baldige, 74 D. & C. 447; Berry v. Heller, 79 F. Supp. 476. The one exception to this rule was set forth in Woods v. Stone, 333 U. S. 472, and summarized by Judge Dannehower in Ambers v. Girondo, supra, as follows:

"There is a line of cases in which recovery against a landlord has been allowed for a period more than one year, but in those cases the order fixing the maximum rental was entered retroactively. In those cases there was no cause of action until the ceiling was fixed, and therefore, recovery for more than a year prior to the suit was only logical."

In the present case the maximum rent which defendant could charge was $40 per month from the date the lease began to run. When defendant collected the first rent in March of 1951, he violated the maximum rent as prescribed by the Act of 1949 and plaintiff's right of action accrued.

This conclusion seems obvious. The premises were recontrolled on April 1, 1949, by the Act of 1949, and necessarily a rent ceiling was established as of that date. It was either the rent being changed on April 1, 1949, or the maximum rent set under the Emergency Price Control Act of 1942. For the reasons given above we are of the opinion that the Act of 1942 fixed the rent ceiling and from April 1, 1949, the maximum rent was $40. This rent ceiling remained in effect at least until October of 1952, when the Office of Rent Stabilization mistakenly issued a prospective order establishing a maximum rent of $90 per month. Therefore, during this entire period defendant was guilty of an overcharge and a violation of the statute each and every month he received a rent payment. Plaintiff failed to seasonably commence suit and he is now precluded from recovering any overcharges made prior

to July 1, 1952. He did not begin his suit "within one year from the date of such violation".

The only other question is whether defendant was guilty of a violation subsequent to the order of October 1952. The orders of October 1952 and January 1953 were canceled by the order of May 15, 1953. We feel that this cancellation had the legal effect of nullifying the prior orders. For all practical purposes the prior orders never existed and the maximum rent was at all times $40 per month. Plaintiff, therefore, is entitled to the overcharges which occurred during the year immediately preceding the commencement of this suit.

And now, July 27, 1954, for the reasons herein given, judgment on the pleadings is entered in favor of plaintiff in the amount of $282.50, plus attorney's fees and costs. The case is ordered on the trial list solely to determine the question of whether defendant's violation was willful or the result of his failure to take practicable precautions against the occurrence of the violation.