### BROMLEY v. McCAUGHN, Collector.

District Court, E. D. Pennsylvania.　May 23, 1928.

No. 12570.

1. **Taxation** ⬷⬵40(7)—**Tax calling for heavier payment by one taxpayer than another, because first is assumed to be better able to bear exaction, is unconstitutional.**

A tax which calls for payment by one taxpayer of a heavier exaction than another, merely because first is assumed to be financially able to bear exaction with less distress than the other, offends against principle of uniformity and of equality before law, and is unconstitutional.

2. **Constitutional law** ⬷⬵12—**Court must look beyond mere verbiage, in which constitutional principles are phrased, and take them for what, in substance, they are.**

In dealing with subject of constitutional principles and propositions, court must look beyond mere verbiage in which they are phrased, and take them for what, in substance, they are.

3. **Constitutional law** ⬷⬵48—**Trial court should not hold statute involved unless conflict with Constitution is clear.**

Trial court should not find against validity of legislative enactment, unless its conflict with constitutional provision is clear.

4. **Internal revenue** ⬷⬵2(11)—**Statute relating to gift tax held not unconstitutional as being direct tax imposed without reference to census (Const. art. 1, § 2, cl. 3, and § 9, cl. 4; Revenue Act 1924, §§ 319–324 [26 USCA §§ 1131–1136], as amended by Revenue Act 1926, § 324 [44 Stat. 86], § 325 [26 USCA § 1121]).**

Revenue Act 1924, §§ 319–324 (26 USCA §§ 1131–1136; Comp. St. §§ 6336⅔s–6336⅔x) as amended by Revenue Act 1926, § 324 (44 Stat. 86) and section 325 (26 USCA § 1121), relating to gift taxes, *held* not unconstitutional as being a direct tax imposed without reference to, and not apportioned according to census of, population, in violation of Const. art. 1, § 2, cl. 3, and section 9, cl. 4.

Action between Joseph H. Bromley and Blakeley D. McCaughn, Collector. Judgment in accordance with opinion.

Brown & Williams, of Philadelphia, Pa., for plaintiff.

George W. Coles, U. S. Atty., of Philadelphia, Pa., for defendant.

DICKINSON, District Judge. The question of law raised by the affidavit of defense filed is the constitutionality of sections 319 to 324, both inclusive, of the Revenue Act of 1924 (26 USCA §§ 1131–1136; Comp. St. §§ 6336⅔s–6336⅔x), as amended by section 324 (44 Stat. 86) and section 325 (26 USCA § 1121) of the Act of 1926. The cause is presented in the nature of a case stated; it being stipulated that, if the proper legal judgment finds the act to be of legal effect, judgment should be entered for the defendant; otherwise for the plaintiff.

The grounds of averred unconstitutionality are (1) the tax imposed by the act is a graduated tax measured by the value of what has passed, and is thus based upon "an arbitrary and unreasonable classification"; and (2) it is a direct tax imposed without reference to, and is not apportioned according to, the census of population, and hence is avoided by article 1, § 9, cl. 4, of the Constitution of the United States.

[1] This invites a general observation. A tax which calls for the payment by one taxpayer of a heavier exaction than another, merely because the first is assumed to be financially able to bear exaction with less distress than the other, may be said to offend against the principle of uniformity and of equality before the law, and in the English sense of the word to be unconstitutional. If the classification of taxpayers is based upon the values of the respective possessions of each, so that he who has ten times the value of what the other has is called upon to pay a tax ten times as great, doubtless no one would charge it to be lacking in uniformity. That a minimum valuation should be fixed below which no exaction is imposed is made reasonable by the fact that the cost of collection would exceed the tax return. When, however, the first is made to pay ratably, not ten times, but fifty times, the sum exacted of the other, then it can be understood why the exaction is denounced as "unjust and unreasonable." Such a judgment, if entertained, is, however, based upon what is thought or assumed to be a standard of what is justice and reason. Generally speaking, such standards differ and differ widely, and, before a judgment can be reached, a standard must be selected and adopted. This suggests the oft-cited distinction and difference between the American idea of the unconsti-

tutionality of statutes and that which prevails in countries which have no written constitutions. The practical difference resides in who is the judge of such unconstitutionality. With us it is the tribunal in which is vested the supreme judicial power; in other countries, which do not have this as a feature of their governmental systems, it resides in the supreme legislative body. The judicial power with us, however, is limited to instances in which the standard is supplied by the Constitution. In all other cases the legislative and not the judicial power determines what is constitutional in the broad meaning of that word.

A very trite and commonplace illustration of the distinction meant to be made is afforded by retroactive statutes and ex post facto laws and bills of attainder. All may alike offend against what may be said to be the common judgment of what is just and reasonable. The judicial power in the one case limits itself to a finding of the meaning of the statute, and will not give it a retroactive effect unless it is clear it is so meant to be; in the other any court would feel itself to be compelled to avoid an ex post facto law or bill of attainder. The reason for the difference is so clear as not to call for its statement. A warrant for the judgment of annulment must be found in the Constitution. This tax was admittedly not laid "in proportion to the census or enumeration" of population, and hence, if it be "a capitation or other direct tax," it clearly is one which Congress, by the express terms of the Constitution, possessed no lawful power to levy. This appears not once but twice in the Constitution. Article 1, § 2, cl. 3, and section 9, cl. 4. It is admitted that these provisions have not been changed by the Sixteenth Amendment. That it is a direct tax is of course asserted, and the proposition supported by the Pollock Case, 157 U. S. 429, 15 S. Ct. 673, 39 L. Ed. 759, and 158 U. S. 601, 15 S. Ct. 912, 39 L. Ed. 1108.

[2] The legal profession, as do all others, in a pinch does not balk at resorting to the simple expedient, when it wishes to change anything, to do so by changing the name of it. When the obligation of contracts becomes inconvenient or property is to be taken without compensation, a state statute, for illustration, is not passed to "impair the obligation" of a contract, nor is the private property taken for public use, but what is done is done in the exercise of the police power. There is surely no such magic in the application of a name, and the courts must look under the label and at the thing

itself. By the same token, in dealing with the subject of constitutional principles and propositions, we must look beyond the mere verbiage in which they are phrased, and take them for what in substance they are. The plain and real truth is that the provisions in the Constitutions of the states and in that of the United States prohibiting the impairment of the obligations of contracts by state laws, and that in every Constitution, state or national, prohibiting the taking of private property for public use without just compensation, and other like provisions, are not as broad as they sound, but have recognized qualifications. There are public acts and laws to which these constitutional principles do not apply, and we label such police regulations. Any other phrase or name would do as well. It is the mere choice of a name. The occasion for resort to this is not, however, a matter of mere choice. The courts are controlled in this, as they are in all their legal pronouncements, by more or less clearly defined principles or doctrines of the law. The final arbiter is after all the common judgment of what is right in the sense of what is "sound law." We have many guides and aids to the reaching of sound judgments, among which are adjudged cases, just as here we have the Pollock Case, supra, and Hylton v. United States, 3 U. S. (3 Dall.) 171, 1 L. Ed. 556. So far as we are informed, both remain of unimpeached authority. The plaintiff, as would be expected, relies on the Pollock Case, and the defendant as stoutly stands by the Hylton Case. Each counsel has indulged himself in the more or less subtle distinctions between the different kinds of taxes. Numerous other cases have been likewise analyzed and discussed, including of course the recent case of Blodgett v. Holden, 275 U. S. 142, 48 S. Ct. 105, 72 L. Ed. ——. We do not feel the call to enter upon the field of this discussion.

[3, 4] The case before us, as we view it, and as we understand to be in effect admitted, is squarely within the ruling in the Hylton Case. By that we feel that we should be bound. Moreover, there is a principle of constitutional law which has general acceptance that a trial court should not find against the validity of a legislative enactment unless its conflict with a constitutional provision is clear. We feel that we can safely venture the assertion that any ruling we might make could not be said to be free from the doubt of its correctness. We have not discussed the application of the due process clause of the Fifth Amendment for reasons which we think are obvious.

The conclusion reached is that we refuse to find this act of Congress to be unconstitutional, and a formal judgment or order in accordance with this conclusion may be submitted.