## In re COLLER.

### No. 18002.

District Court, E. D. Pennsylvania.

Oct. 24, 1934.

John N. Landberg, of Philadelphia, Pa., for petitioner.

Louis S. May and John E. Malone, both of Lancaster, Pa., opposed.

DICKINSON, District Judge.

Leave was granted to file briefs. The cause is now ripe for a ruling.

The difficulty encountered in finding an answer to the question raised is met in that of finding a caption and subheading for the proceeding. It may be viewed as a motion in bankruptcy proceeding or it may be viewed as a debtor's petition under section 75 of the amended act (11 USCA § 203).

The question presented is easily grasped. On June 27, 1934, the petitioner had the right to file a voluntary petition in bankruptcy under the well-known provisions of the Bankruptcy Acts (11 USCA), or to file a debtor's petition under the provisions of section 75 (11 USCA § 203). He elected to file a petition in bankruptcy, and on June 28, 1934, a trustee was elected. In 1920 he had purchased a farm for which he paid part in so-called cash and part in a purchase-money mortgage for $10,000. This mortgage was due, and on June 8, 1934, judgment was en-

tered on the bond and warrant of attorney accompanying the mortgage, and a writ of fieri facias issued to sell the mortgage premises. These proceedings were halted by the bankruptcy.

A situation was thus created as sad as it is common. There was and is no market for real estate. If the farm is sold at sheriff's sale, it is a sure prediction that it will be bought in by the mortgagee for less than the mortgage debt. The mortgagee would thus have all of the purchase price which has been paid, the return to him of the property which he had sold, and the mortgagor would be saddled with the whole or a large part of the mortgage debt. Such is the situation from the viewpoint of the mortgagor. The situation of the mortgagee differs from this only in degree even if he is permitted to pursue his legal remedies.

The first meeting of creditors was held June 28, 1934. On August 3, 1934, the present petition was filed, and an amended petition on August 8, 1934. An answer was filed August 15, 1934. Unhappily, it is beyond the power of any court to undo this condition of affairs. All we can do is to award to each party his legal rights.

We start with the situation that, although the two things are now incorporated in the bankruptcy laws, they are none the less distinct and different. One is the familiar bankruptcy proceeding; the other is the adjustment of a debtor's financial affairs under what is called a debtor's petition. There is a provision in the law to transmute the latter into the former, but there is none for the reverse process. The real purpose of the present petition is to do this very thing.

■ At the outstart, we are met with what may be called this technical situation. No one can have the benefit of section 75 (11 USCA § 203) unless he is the owner of a farm. This petitioner does not own the farm which formerly belonged to him or anything beyond what the Pennsylvania exemption laws allow. By operation of law, the title to all the bankruptcy assets was vested in the trustee in bankruptcy to hold for the creditors. After that the creditors, not the bankrupt, were the owners of everything other than exempted property. They share whatever is realized from the bankruptcy estate qua owners, not qua creditors. Their claims as creditors merely measure their ownership shares. This is the settled doctrine of the bankruptcy law. This title of the trustee or creditors may be divested by a composition. If a composition offer is made, accepted by the re-

quired number of creditors, and approved by the court, the effect of this is to revert title in the bankrupt to the bankruptcy assets and give title to the composition fund to the creditors. In this they share qua creditors. No such composition was offered, so that title to all property (with the exception before mentioned) is in the trustee for creditors. Having this title, the court has no power to take their property away from them except as authorized by law. The bankruptcy laws before the amendments referred to conferred no such power except through a composition.

■ The only question then is whether it is given by the section 75 amendment or those which have followed it, including the one which by a coincidence was passed June 28, 1934. What is now subdivision (s) of section 75 is the pertinent one (11 USCA § 203 (s). It relates in the first place solely to those who are petitioners under section 75 and not to those who have already been adjudged bankrupts. This classification does not include the present petitioner, for he has been adjudged a bankrupt.

■ In the second place, it includes only those who have failed to secure the approval of creditors to an offered plan of extension or who are dissatisfied with the extension plan approved by creditors. This does not include the petitioner, because no extension plan has been submitted.

■ In the third place, the right given the debtor is to "amend his petition or answer asking to be adjudged a bankrupt." This does not apply to the petitioner, because he has already asked "to be adjudged a bankrupt."

■ It is further urged upon us that the petitioner is too late with his "request," because it must be made "at the time of the first hearing" or first meeting of creditors. We cannot, however, apply this limitation, because this provision of the act clearly refers to a hearing following a debtor's proceeding, and no such hearing or meeting of creditors has been had.

Recurring to the proposition that title to the bankrupt's property has passed to the trustee in bankruptcy holding for creditors, and that this court has no power to deprive the creditors of their ownership rights unless authorized by law to so do, we conclude that the present situation has not been foreseen nor provided for, and that we are without jurisdictional power to grant the prayers of the petition which, for this reason, should be dismissed.

■ We have been favored with a discussion of the constitutionality of section 75, but into this we need not go. Moreover, we would as a trial court be slow to deny constitutionality to an act of Congress. This is a duty, when it arises, which peculiarly belongs to the appellate courts. There is an ingrained prejudice on the part of many against trial courts so doing. This in part is because of the practical inconvenience which may result in a law being enforced in some judicial districts and treated as a nullity in others.

■ We have been further asked to treat the answer to the present petition as an application for leave to foreclose the mortgage in question. This we prefer not to do. It is more orderly to formally ask for such leave. This suggestion is no intimation, however, of the action of the court.

The petition is dismissed.