

# THE ATTORNEY GENERAL
# OF TEXAS

AUSTIN, TEXAS 78711

CRAWFORD C. MARTIN
ATTORNEY GENERAL

November 28, 1972

Honorable Joe Resweber
County Attorney
Harris County Courthouse
Houston, Texas  77002

Honorable Fred P. Holub
County Attorney
Matagorda County Courthouse
P. O. Box 1527
Bay City, Texas  77414

Opinion No. M-1271

Re: Meaning of "primary oc-
cupation and source of
income of the owner"
when assessing land
used for agricultural
purposes under Article
VIII, Section 1-d of
the Texas Constitution.

Gentlemen:

You have each submitted opinion requests which involve an
interpretation of Article VIII, Section 1-d of the Texas Consti-
tution. Both requests ask whether land may receive the "agri-
cultural use" designation provided by Article VIII, Section 1-d
when the owner's income from other sources exceeds the income
derived from agricultural use of the land. Section 1-d of
Article VIII reads as follows:

"§1-d. Assessment of land designated for agricultural use

Sec. 1-d. (a) All land owned by natural persons
which is designated for agricultural use in accordance
with the provisions of this Section shall be assessed
for all tax purposes on the consideration of only
those factors relative to such agricultural use. 'Ag-
ricultural use' means the raising of livestock or grow-
ing of crops, fruit, flowers, and other products of
the soil under natural conditions as a business venture
for profit, which business is the primary occupation
and source of income of the owner.

(b) For each assessment year the owner wishes
to qualify his land under provisions of this Section
as designated for agricultural use he shall file with

the local tax assessor a sworn statement in writing describing the use to which the land is devoted.

(c)  Upon receipt of the sworn statement in writing the local tax assessor shall determine whether or not such land qualifies for the designation as to agricultural use as defined herein and in the event it so qualifies he shall designate such land as being for agricultural use and assess the land accordingly.

(d)  Such local tax assessor may inspect the land and require such evidence of use and source of income as may be necessary or useful in determining whether or not the agricultural use provision of this article applies.

(e)  No land may qualify for the designation provided for in this Act unless for at least three (3) successive years immediately preceding the assessment date the land has been devoted exclusively for agricultural use, or unless the land has been continuously developed for agriculture during such time.

(f)  Each year during which the land is designated for agricultural use, the local tax assessor shall note on his records the valuation which would have been made had the land not qualified for such designation under this Section.  If designated land is subsequently diverted to a purpose other than that of agricultural use, or is sold, the land shall be subject to an additional tax.  The additional tax shall equal the difference between taxes paid or payable, hereunder, and the amount of tax payable for the preceding three years had the land been otherwise assessed.  Until paid, there shall be a lien for additional taxes and interest on land assessed under the provisions of this Section.

(g)  The valuation and assessment of any minerals or subsurface rights to minerals shall not come within the provisions of this Section."

The request submitted by Honorable Joe Resweber suggests that Article VIII, Section 1-d(a) is violative of both the equal protection and due process clauses of the Constitution of the United States.  In the brief furnished in connection with this request, the writer assumes that where revenue from a sale of agricultural land exceeds the profit resulting from agricultural use of the balance of the land, the right to the designation of agricultural use is lost.  Taking this result as a premise, it is submitted that Article VIII, Section 1-d(a) is violative of the equal protection and due process clauses of the Constitution of the United States.[1]

The recent decision of Klitgaard v. Gaines, 479 S.W.2d 765 (Tex.Civ.App. 1972, error ref., n.r.e. [Motion for Rehearing overruled November 1, 1972]) destroys the premise on which the question of constitutionality is predicated.  Klitgaard holds that sporadic sales and other transactions there involved which resulted in income in excess of that derived from agricultural use of the land did not affect the owner's right to agricultural use designation where such use constituted the business and primary occupation and source of income of the owner.

---

[1] In reaching this conclusion, the writer recognizes that, generally speaking, there is nothing in the Federal Constitution which requires that State taxation be equal, uniform or just (citing Shaffer v. Carter, (1920) 252 U.S. 27, 40 S.Ct. 221) if the practical operation of the tax bears a relation to opportunities, protection or benefits conferred by the State (citing State of Wisconsin v. J. C. Penney Co., (1941) 61 S.Ct. 246, 311 U.S. 435).  Nevertheless, the due process and equal protection clauses afford protection against discriminatory taxation (citing Morton Salt Co. v. City of South Hutchinson, (1947) 159 F.2d 897) within an otherwise reasonable classification for tax purposes (citing Phillips Chemical Co. v. Dumas Independent School Dist., (1960) 80 S.Ct. 474, 361 U.S. 376).  Even though numerous cases recognize the power of the State to treat agricultural land differently from non-agricultural land, a taxing scheme which imposes a greater tax upon a taxpayer simply because he is better able to bear its burden amounts to an abusive and unreasonable discrimination within the class (citing Bromley v. McCaughn, (Dist. Ct. Penna., 1928) 26 F.2d 380).

In Klitgaard, the taxpayers had lived on the land for many years and, with the exception of a few months, had farmed and ranched it continuously during that time, personally supervising and laboring in raising crops and livestock. This operation was conducted at all times as a business venture for profit. During the taxable years in question, the taxpayers received money from other sources, including the following: principal and interest on occasional land sales; rental of commercial property acquired by inheritance; oil and gas bonus and delay rentals from certain mineral leases on a ranch in another county, no production of minerals being involved. Three of the sales involved were to irrevocable trusts created for the benefit of the taxpayers' children, for which sales a note was given, payable with interest within five years. The trial court found these sales to be bona fide at market price and a part of the taxpayers' estate plan. It further expressly found such sales were not a business venture of the taxpayers. Additional sales resulted in partial payments being made in the taxable years, and a sale was also made of part of a ranch in another county which was operated as a unit with the land for which designation was sought.

In holding that the use of the land constituted "agricultural use", the court emphasized the fact that taxpayers' primary occupation and source of income.was their farming and ranching activities, and that the income received from the transactions above enumerated did not constitute money received "in any business venture or occupation within the meaning of the amendment [Article VIII, Section 1-d]". The tax collector's emphasis on that portion of the constitutional provision which speaks of the "source of income of the owners" and his position that agricultural use designation was lost whenever non-agricultural income exceeded agricultural income in any one year was specifically rejected. At pages 769, 770, the court said:

> "In applying his dollar balancing test by determining what is agricultural and non-agricultural income, appellants' tax collector sometimes borrows from the doctrines of the Internal Revenue Service, but not 'necessarily'. On cross-examination Mr. Klitgaard, the tax collector, was asked about his guidelines in arriving at agricultural or non-agricultural income. His rather startling reply was, 'We really have no guidelines, significant guidelines relative to the

law as written here, and there are many situations
that arise that are very difficult to get answers
to out of the law itself.'

"An examination of the tax collectors' deter-
minations as to non-agricultural income seems to
bear out the accuracy of his statement. ...

\*   \*   \*   \*   \*

"Eligibility for the benefits of the amendment
is not to be determined by the vagaries of nature or
the market, nor by fortuitous investment or inherit-
ance.  But rather to qualify under the amendment one
must be engaged in a bona fide effort to earn a profit
from the land by agricultural operations. ..."

Under the facts submitted by Honorable Joe Resweber, there
was only one sale of a portion of the land formerly accorded
agricultural use designation, which sale did not affect subse-
quent use of the balance for farm purposes.  Under Klitgaard,
the owner of the land is still entitled to agricultural use
designation.

The question submitted by Honorable Fred P. Holub is couched
in more general terms, and asks whether agricultural use desig-
nation must be denied in any case where income derived from any
other source is more than 50% of the income derived from agri-
cultural use.  We reviewed in detail the facts in Klitgaard and
the court's application of the constitutional provision thereto
because that case furnishes guidelines for tax collectors in such
cases.  In each case, the tax collector must consider all perti-
nent facts in the light of Klitgaard, on the basis of which he
must conclude whether the agricultural use of the land in ques-
tion is in fact a "business" which "is the primary occupation
and source of income of the owner".

## S U M M A R Y

Where income from agricultural use is exceeded
by income from other sources, an owner of land may
still obtain agricultural use designation under

Article VIII, Section 1-d of the Texas Constitution if the agricultural use of the land is in fact a "business" which is "the primary occupation and source of income of the owner".

Very truly yours,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by Marietta McGregor Payne
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Kerns Taylor, Chairman
W. E. Allen, Co-Chairman

Harriet Burke
Jack Sparks
Arthur Sandlin
John Banks

SAMUEL D. McDANIEL
Staff Legal Assistant

ALFRED WALKER
Executive Assistant

NOLA WHITE
First Assistant