Myron H. Tomb, Jr., Indiana, Pa., for plaintiffs, Richard N. Clark, Sr. and Marlene A. Clark.

Edwin M. Clark, Indiana, Pa., trustee.

W. Parker Ruddock, Indiana, Pa., for defendant, Sav. & Trust Co. of Pennsylvania.

MEMORANDUM OPINION.

JOSEPH L. COSETTI, Bankruptcy Judge.

In re Richard N. CLARK, Sr. and Marlene A. Clark, Debtors.

Richard N. CLARK, Sr. and Marlene A. Clark, Plaintiffs,

v.

The SAVINGS & TRUST COMPANY OF PENNSYLVANIA, Defendant.

Bankruptcy No. 80–995.
Adv. No. 80–950.

United States Bankruptcy Court, W. D. Pennsylvania.

June 3, 1981.

FACTS

On June 27, 1980 Richard N. Clark, Sr. and Marlene A. Clark filed a joint petition under Chapter 7 of the Bankruptcy Code. The first meeting of creditors was held on October 3, 1980. The trustee's Proceeding Memo reports the value of the debtors' real estate to be $19,500.00. The trustee approved the § 522(d)(1) exemption of $15,-000.00 taken by the debtors.

On October 17, 1980 The Savings & Trust Company of Pennsylvania (hereinafter "Trust Company") filed an Application for Abandonment of Property. On October 29, 1980 the debtors filed an objection and reply to the application for abandonment. Additionally, the debtors filed a Petition for Removal of a Judgment Lien to Protect an Exemption, hereafter referred to as a Petition to Avoid a Judgment Lien. A hearing

was scheduled for November 21, 1980 on the Petition to Avoid. The Trust Company was not represented; consequently, on November 26, 1980 a default Order was entered avoiding the judgment lien as to the debtors' property in question. Later, the Court was informed that the Trust Company had not received adequate notice of the hearing. A new hearing was scheduled for December 29, 1980 on the Objection to the Abandonment and the Petition to Avoid a Judgment Lien.

The record does not present a dispute as to the market value of the real property of $19,500.00, although the debtors listed the market value as $15,000.00 in their schedules. The debtors have claimed an exemption of $15,000.00 under 11 U.S.C. § 522(d)(1). The period for objecting to exemptions has passed and the exemptions are accepted.

The Judgment entered by the Trust Company shows an original principal of indebtedness in the amount of $13,485.64. Accompanying said Judgment Note is a personal loan note providing for payments of the debt in monthly installments beginning on June 20, 1978. The debtors discontinued making their installment payments as of March 20, 1980. The payoff amount on October 16, 1980 owed to the Trust Company is $8,590.03. This amount includes attorney's fees of $1,500.00. The debtors rely on avoiding this lien and in the alternative did not question the amounts. The Trust Company alleges that a judgment was entered in the Court of Common Pleas of Indiana County on May 17, 1978 and that the judgment is a lien on real estate owned by the debtors in the Borough of Ernest, Indiana County, Pennsylvania. The Trust Company argues "that there is no retroactive application to avoid a security interest conveyed prior to November 6, 1978." (Plaintiff's brief, p. 3)

Using a market value of $19,500.00 for the real estate and subtracting the $15,000.00 exemption and the $800.00 cash exemption would permit the judgments exceeding $3,700.00 to be avoided in reverse order of priority.

The issue before this Court is a constitutional question of whether 11 U.S.C. § 522(f) allows debtors avoidance of judicial liens which have attached to property prior to the enactment of the Bankruptcy Code.

Constitutional attacks on the lien avoiding provisions are numerous, and a resolution of the issue is needed here. The Court takes judicial notice that on November 6, 1978 the President signed Public Law 95–598, Title 1 which was codified as Title 11 of the U.S.Code and is now the Bankruptcy Code; it became effective on October 1, 1979.

The Congressional Record reveals that one of the goals of the Code was to provide a more modern bankruptcy mechanism for consumer debtors. Congress recognized that consumer credit had become a very important element of the economy. Since 1938 there had been little or no revision of the federal Bankruptcy Act. Congress found that most state exemption laws had not been revised for a long period of time and were outmoded. Congress desired to make bankruptcy "a more effective remedy for the unfortunate consumer debtor." H.Rep.No. 95–595, reprinted in U.S.Code of Cong. & Adm.News 5787, 5963, 5966, 6087 (1978).

Congress concluded that there was a federal interest in seeing that a debtor survived bankruptcy with adequate recourse and possessions to avoid being a public charge and to be given a fresh start. Under the new Bankruptcy Reform Act, in order to accomplish these purposes, Congress established a set of federal exemptions which a debtor may choose as an alternative to the state exemptions. The new Code also provided that the various states could deny or modify these federal exemptions. Thus far, Pennsylvania has chosen not to act.

Further, the Congress recognized that modern creditors have developed techniques which enable them to avoid debtors' former exemptions. H.Rep.No. 95–595, reprinted in U.S.Code of Cong. & Adm.News 6077, 6087 (1978). Therefore, Congress developed and adopted § 522(f) which allows the debt-

or to nullify waiver of exemption and to avoid judicial liens which impair the exemption granted.

The Trust Company has raised constitutional issues about the Congressional power to avoid judicial liens under § 522(f). In this case, when the judicial lien debt was perfected prior to November 6, 1978, specific real or personal property of the debtor was available to the creditor for execution at that time. The Trust Company argues that prior to November 1, 1979 a prudent creditor could evaluate the property owned, determine the priority of other liens, and conclude whether or not the security was adequate to protect the loan, etc. The passage of the Bankruptcy Reform Act and its signing on November 6, 1978 was the first notice that these judicial lien creditors had that otherwise valid and valuable liens *could* be avoided after October 1, 1979. During the interim period (November 6, 1978 to October 1, 1979), unless the debtor defaulted it would be difficult for a creditor to execute on these judgment liens or obtain other security. These creditors argue that they planned their conduct on this basis and relied on the legal consequences thereunto. They argue that statutory law at the time of the execution of the contract should serve as a guide to individual conduct; they further argue that the retroactive effect of this enactment thwarts this reliance.

Creditors argue that valuable remedies at law or valuable contractual rights have been denied them retroactively. They admit that after the President's signing on November 6, 1978 creditors would be on notice not to rely on liens and to utilize other security instruments. But as to the judicial liens which were perfected prior to November 6, 1978, creditors argue that Congress has denied them remedies in a retroactive manner for which they had contracted without due process.

When Congress chose to adopt a new bankruptcy scheme, it of necessity had to choose an effective date. In the main, Congress gave the Reform Act prospective application. The President signed the Act on November 6, 1978, with an effective date of October 1, 1979. Sections 401 and 403 clearly make the date of filing the petition the date that determines which bankruptcy provisions apply to the parties.

The Court found no evidence in the Congressional Record indicating that Congress intended § 522(f) to apply only in a prospective manner. We therefore hold that Congress intended the law to affect all liens in existence when the Reform Act became effective.

It is clear from the Congressional Record that Congress intended to avoid judicial liens that were not contractual. The principal question becomes: Did Congress act unconstitutionally when it provided for retroactive application of § 522(f)?

The creditor here argued that Congress did not intend § 522(f) to have a retroactive effect. There is no evidence in the plain language of the Act that Congress intended the provision to be effective only as to liens perfected after November 6, 1979. Congress knew how to clearly write the § 522(f) provision so as to operate entirely prospectively, and it did not do so.

In order to implement the Congressional plan to permit debtors to assert their exemptions, Congress had permitted debtors to avoid judicial liens which might impair the exemption. Section 522(f) states:

(f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (h) of this section, if such lien is—

(1) a judicial lien; or

(2) a nonpossessory, nonpurchase-money security interest in any—

(A) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor;

(B) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor; or

(C) professionally prescribed health aids for the debtor or a dependent of the debtor.

The plain language of 11 U.S.C. § 522(f) permits avoidance of judicial liens. Avoidance is limited to liens that would impair an exemption to which a debtor would have been entitled under subsection 522(b). Subsection 522(b) allows the debtor the exemptions which are enumerated in subsection 522(d).

> (b) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate either—

> (1) property that is specified under subsection (d) of this section, unless the State law that is applicable to the debtor under paragraph (2)(A) of this subsection specifically does not so authorize; or, in the alternative,

> (2)(A) any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition, or for a longer portion of such a 180-day period than in any other place; and

> (B) any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or joint tenant to the extent that such interest as a tenant by the entirety or joint tenant is exempt from process under applicable nonbankruptcy law.

Therefore, in order to obtain the requested relief, the debtors have the burden of demonstrating that: 1) they have exemptions which have been granted; 2) that the lien being avoided is a judicial lien or nonpurchase money security interest; 3) that such lien or interest impairs the above exemptions and therefore 4) as a matter of law they are entitled to have such liens or interests avoided under § 522(f). *In re Butler*, 5 B.R. 360, 6 B.C.D. 768, 769 (Bkrtcy.D. Md.1980).

## CONSTITUTIONAL LIMITATIONS ON RETROACTIVE MEASURES

The Supreme Court has considered retroactivity when interpreting several provisions of the Constitution, including Ex Post Facto Clauses (U.S.Const. Art. 1 § 10 cl. 1, Art. 1 § 9 cl. 3), Contract Clause considerations (Art. 1 § 10), and Due Process considerations (5th Amendment, 14th Amendment). Early in the nation's history the Supreme Court determined that ex post facto clauses prohibited the States and the federal government from passing criminal or penal measures that had retroactive effect. *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 390, 397, 1 L.Ed. 648 (1798). The Bankruptcy Reform Act is not within the ex post facto limitations.

## RETROACTIVE LIMITATIONS UNDER THE CONTRACT CLAUSE

The Contract Clause of the Constitution prohibits the states from enacting laws that will impair "the obligation of contracts." U.S.Const., Art. 1 § 10. This limitation does not apply to the federal government. The Supreme Court in *Home Building & Loan Association v. Blaisdell*, 290 U.S. 398, 427, 428, 54 S.Ct. 231, 235, 236, 78 L.Ed. 413 (1934) called attention to the desire of the drafters of the Constitution as found in *The Federalist* No. 44, and there appears to be little doubt that the drafters intended to restrain the states from enacting debtor relief acts. Widespread economic distress which followed the Revolutionary War caused "an ignoble array of legislative schemes for the defeat of creditors and the invasion of contractual obligations." When the Contract Clause limitation on the states is considered with the grant of the paramount bankruptcy power to the Congress, the federal bankruptcy power is complete.

Very early the Supreme Court applied the Contract Clause to debtor relief laws and other state statutes which impaired the states' obligations to private citizens. See *Vanhorne's Lessee v. Dorrance*, 2 U.S. (2 Dall.) 303, 1 L.Ed. 391 (1795); *Fletcher v. Peck*, 10 U.S. (6 Cranch.) 87, 3 L.Ed. 162 (1810); *New Jersey v. Wilson*, 11 U.S. (7

Cranch.) 164, 3 L.Ed. 303 (1812); *Dartmouth College Case*, 17 U.S. (4 Wheat.) 518, 4 L.Ed. 518 (1819).

In 1819 the Supreme Court invalidated a New York insolvency law that discharged debtors once they had surrendered property, finding the retroactive effect a violation of the Contract Clause. *Sturges v. Crawenshield*, 17 U.S. (4 Wheat.) 122, 4 L.Ed. 529 (1819). In *Sturges*, it was pointed out that the distinction between the obligation of a contract and the remedy given by the legislature to enforce the obligation existed in the nature of things. Without impairing the obligation of contract, the remedy may certainly be modified as the wisdom of the nation shall direct.

In 1825 the Supreme Court sustained a debtor relief act that was *prospective*. *Ogden v. Saunders*, 25 U.S. (12 Wheat.) 213, 6 L.Ed. 606 (1825). Chief Justice Marshall attempted but did not convince the Court that the Contract Clause prohibited the state from enacting debtor legislation that was prospective in application.

In *Von Hoffman v. City of Quincy*, 4 Wall. 535, 550, 552, 18 L.Ed. 403 (1868) the Supreme Court stated:

[t]he laws which subsist at the time and place of the making of a contract, and where it is to be performed, enter into and form a part of it as if they were expressly referred to or incorporated in its terms. Nothing can be more material to the obligation than the means of enforcement... It is competent for the States to change the form of the remedy, or to modify it otherwise, as they may see fit, provided no substantial right secured by the contract is thereby impaired. No attempt has been made to fix definitely the line between alterations of the remedy, which are to be denied legitimate, and those which, under the form of modifying the remedy, impair substantial right. Every case must be considered upon its own circumstances.

In *Piqua Branch of the State Bank v. Knoop*, 57 U.S. (16 How.) 369, 14 L.Ed. 977 (1854) the Court, when reviewing a retroactive statute, would not permit a state tax exemption which had been granted to be revoked by subsequent statute because of the Contract Clause limitation. Later Supreme Court decisions refined this Contract Clause limitation on retroactivity of state statutes and held that on matters such as eminent domain (*West River Bridge Co. v. Dix*, 47 U.S. (6 How.) 507, 12 L.Ed. 535 (1848)), and the basic police powers (*Stone v. Mississippi*, 101 U.S. 814, 25 L.Ed. 1079 (1880) and *Manigault v. Spings*, 199 U.S. 473, 480, 26 S.Ct. 127, 130, 50 L.Ed. 274 (1905)), retroactive application of statutes related to these powers were not subject to the Contract Clause limitation.

In *Sturges*, 17 U.S. (4 Wheat.) 200, 201, *supra*, the Supreme Court concluded that although the Contract Clause precluded a state from enacting laws which impaired contracts, the state could modify available remedies for the breach of a contract. Later in *Bronson v. Kinzie*, 42 U.S. (1 How.) 311, 316, 317, 11 L.Ed. 143 (1843) the Supreme court placed a reasonableness test on those modifications as to whether they affected substantial rights of the parties. Although the courts have recognized the difference between a contractual obligation and a remedy, the distinction between them has tended to be obscure, and a term like "vested right" may be a conclusory judgment after other analyses have led the court to its decision. In *Coombes v. Getz*, 285 U.S. 434, 52 S.Ct. 435, 76 L.Ed. 866 (1934), the Court reversed a state statute which affected the vested contract rights of third persons using both the Contract Clause and Due Process Clause.

## SUBSTANTIVE DUE PROCESS

In the early 1930's, the Supreme Court relied on the doctrine of "economic or substantive due process" and utilized the Contract Clause less frequently in order to find unconstitutionality. During the Great Depression, as the state and federal governments began to develop debtor relief legislation, numerous cases came before the Court. In *Home Building & Loan Association v. Blaisdell, supra*, the Supreme Court sustained a debtor relief law with retroac-

tive impact. A 1933 Minnesota law (Mortgage Moratorium Law of 1933) conferred authority on the Minnesota court to extend the period of redemption after a mortgage foreclosure sale provided that the mortgagor paid a reasonable rental value of the property. The mortgagee contended that the law violated the Contract Clause. The Supreme Court considered this statute to be reasonable because it was of limited duration designed for an emergency. The Court, relying on its 1848 decision in *West River Bridge Co. v. Dix, supra,* hinged its decision on the emergency nature of the problem and the inherent police power of the state to deal with an emergency situation. That Court permitted delay of creditor rights because of an emergency and because it did not constitute a complete elimination of those rights. In *W. B. Worthen Co. v. Thomas,* 292 U.S. 426, 54 S.Ct. 816, 78 L.Ed. 1344 (1934), a 1933 Arkansas debtor relief law exempting money related to insurance policies from judicial process was held to violate the Contract Clause, and in *W. B. Worthen Co. v. Kavanaugh,* 295 U.S. 56, 55 S.Ct. 555, 79 L.Ed. 1298 (1935), the Court held that the elimination of a foreclosure remedy violated the Contract Clause when no money was paid to creditors. Judge Cardozo observed in *Worthen v. Kavanaugh, supra,* that the distinction between obligation and remedy is much talked about but "... is at times obscure," although he further observed that "Even when the public welfare is invoked as an excuse, these bounds must be respected." 295 U.S. 56, 60, 55 S.Ct. 555, 557, 79 L.Ed. 1298 (1935).

However, in 1945 in *East New York Savings Bank v. Hahn,* 326 U.S. 230, 66 S.Ct. 69, 90 L.Ed. 34 (1945) the Court upheld extension of a mortgage moratorium even though the period of extension was for over ten years because reasonable consideration for creditors was found at each extension.

In these cases the Supreme Court did not invoke the Contract Clause to void state debtor relief acts if the state altered remedies in a reasonable manner related to a public purpose. During this period state statutes were not permitted to impair the creditor's accrued rights in a complete manner or to use the creditor's rights to improve the debtor's position. It should be noted that these cases largely involved mortgages, not debts secured by judicial liens. But these cases provide us with some guidelines.

In more recent times the Supreme Court has tended not to invalidate retroactive state laws under the Contract Clause if a reasonable public purpose was demonstrated. In *El Paso v. Simmons,* 379 U.S. 497, 85 S.Ct. 577, 13 L.Ed.2d 446 (1965), the Supreme Court sustained a retroactive Texas statute which modified the state of Texas' obligation since the state had a reasonable public purpose. More recently, in *United States Trust Co. v. New Jersey,* 431 U.S. 1, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977), the Supreme Court refused to defer to the judgment of the state legislature as to the public purpose being served and found necessity and reasonableness lacking in that statutory legislative judgment. In that case, by a four justice majority opinion, the Supreme Court found that the impairment of contract was not reasonable in relation to the police power interests being served. This decision may have limited precedential value for our purposes because of the minority opinion of Justice Blackmun which emphasized that the Court would continue to defer to the legislative judgment as to public purpose when only private contractual obligations were affected.

## DUE PROCESS CLAUSE LIMIT ON RETROACTIVITY

The ex post facto clauses were always used and applied to retroactive state and federal statutes in criminal matters. Initially the Supreme Court reflected the explicit bias that is expressed in the Constitution against retroactive statutes and, using the Contract Clause, applied the concept to the state statutes.

The Supreme Court has applied the Fifth Amendment to strike down federal laws which have retroactive impact, even though the Fifth Amendment is not explicit on the

834

retroactivity issue. Without examining the early application of the Fifth Amendment to the federal government alone and the developing application of the Fourteenth Amendment to the states, the Supreme Court has used these clauses to strike down retroactive legislation.

However, a change in the Supreme Court's treatment of retroactivity is apparent as the Depression wore on. In *Nebbia v. New York*, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940 (1934), the Supreme Court expressed its views on the requirements of due process. *Id.* at 537, 54 S.Ct. at 516. In 1935, in a 5-to-4 decision in *Norman v. B & O Railroad*, 294 U.S. 240, 55 S.Ct. 407, 79 L.Ed. 885 (1935), the Court sustained the exercise of Congressional power over the monetary system in a manner that invalidated contractual obligation to pay principal and interest on bonds in gold coin of the United States, holding that it did not violate the Due Process clause of the Fifth Amendment.

The Supreme Court has been more restrictive in holding the federal government to its own contractual obligations. In 1934 in *Lynch v. United States*, 292 U.S. 571, 54 S.Ct. 840, 78 L.Ed. 1434 (1934), the Supreme Court held that the federal government violated the Due Process clause of the Fifth Amendment when it cancelled insurance continued in force by permanent disability for reasons of economy, finding this not within paramount police power. In *Lichter v. United States*, 334 U.S. 742, 68 S.Ct. 1294, 92 L.Ed. 1694 (1948), it deferred to the Congressional judgment that the public emergency sustained such a retroactive statute that involved the government power to renegotiate war contracts to recapture profits.

In 1935, in *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935), the Supreme Court (on the same day that it struck down several major elements of the New Deal) invalidated the Frazier-Lemke Act, an emergency Depression debtor relief measure, because it substantially reduced the value of the existing mortgages. Although the 1935 Court recognized the emergency that existed, the retrospective impact of the Act was considered violative of the Due Process clause of the Fifth Amendment, and it was struck down.

It may be unfair to note that in 1936 President Roosevelt was overwhelmingly re-elected and that on February 5, 1937 proposed his plan for expanding the Supreme Court.

Historically, it may be interesting and useful to note that this appears to be the high point in the Supreme Court's support of substantive due process considerations. With this decision substantive due process considerations began to decline. Just two years later the Supreme Court upheld in *Wright v. Vinton Branch of Mountain Trust Bank*, 300 U.S. 440, 57 S.Ct. 556, 81 L.Ed. 756 (1937), a federal statute (the new Frazier-Lemke Act) which gave farmers a three year stay of foreclosure redemption rather than an absolute one. The Court took pains to note all the changes Congress had made in the Act based on the *Radford* decision. In this case the Court declared that the test of whether a statute restricts by delay a lienholder's remedy under state law is not the Contract Clause retroactive limitations on the states but whether the exercise of the bankruptcy power by Congress so modified the lienholder's remedial or substantive rights so as to deny due process under the Fifth Amendment in an unreasonable manner.

The *Wright* court stated: "... a court of bankruptcy may affect the interests of lienholders in many ways." 300 U.S. 440, 470, 57 S.Ct. 556, 565, 81 L.Ed. 736 (1937). In *Kuehner v. Irving Trust Co.*, 299 U.S. 445, 57 S.Ct. 298, 81 L.Ed. 340 (1937) and in *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976), the Court did not find retroactivity to be a denial of due process. The Court in the above cases held that the retroactivity must not be arbitrary and unreasonable. In *Usery*, by an Act Congress had placed responsibility on the coal mine operators to provide benefits for mine workers who had contracted "black lung" disease. The mine

operators argued that the liability was completely unexpected, in that it required the operators to pay benefits to miners who had left their employ long before the effective date of the Act. The Court did not justify the decision on a negligence theory; it recognized that state law may not have imposed liability and that in many cases the operators might have been unaware of the danger. The Court stated that retroactive legislation was not unconstitutional "because it upsets otherwise settled expectations." *Usery, supra,* at p. 16, 96 S.Ct. at p. 2893. The *Usery* court deferred to the wisdom of Congress' chosen scheme, *supra* at p. 14, 96 S.Ct. at p. 2892, in order to spread costs in a rational manner, *supra* at p. 19, 96 S.Ct. at p. 2894, and sustained the retroactive effect as not violative of the Fifth Amendment.

From time to time the Court has used the conclusionary language of "vested rights" and "legal remedy" but this is not helpful in our analysis. In 1947 the Supreme Court stated:

> So long as the Constitution authorizes the subsequently enacted legislation, the fact that its provisions limit or interfere with previously acquired rights does not condemn it. Immunity from federal regulation is not gained through forehanded contracts. Were it otherwise, the paramount powers of Congress would be nullified by 'prophetic discernment'. The rights acquired by judgments have no different standing. *Fleming v. Rhodes,* 331 U.S. 100, 107, 67 S.Ct. 1140, 1144, 91 L.Ed. 1368 (1947).

### SUMMARY

The early cases concerned attempts by the states to achieve debtor relief. In those cases the Supreme Court did permit a modification of "legal remedies" but only if the modification did not substantially impair "vested contractual rights". Retroactive effect was not favored. These cases were considered under the Contract Clause which applies to the states but not to the federal government. The more recent cases have been considered under the Fifth Amend-

ment Due Process consideration. The Supreme Court has not held retroactive effect in civil matters to be per se unconstitutional. The Constitution contains no express prohibition against laws which operate retroactively; the Due Process Clause is read to prohibit retroactivity which is unreasonable. See *Porter v. Senderowitz* 158 F.2d 435 (3rd Cir. 1947). The Court has treated state debtor relief acts that had retroactive effect as violative of the Contract Clause. However, as early as 1825 in *Ogden, supra,* the Court sustained a retroactive matter. In *Bronson, supra,* the Court placed a reasonable test on the power. In *Coombes, supra,* the Court began to shift its analysis to the Due Process Clause. In *Homebuilders, supra,* the Court found a retroactive modification reasonable because it was of limited duration. In *Nebbia, supra,* the requirement of due process was stressed. In *Radford, supra,* it found the retroactive modification substantial and violative of the Fifth Amendment. In *Wright, supra,* it did not utilize the Contract Clause and based its analysis on the Fifth Amendment Due Process consideration and found it to be reasonable.

Finally, in *Usery, supra,* the Court deferred to the Congressional wisdom and upheld a scheme of spreading the costs in a rational manner which had retroactive effect. Here, the Court was not dealing with a paramount power of Congress. A fortiori, when dealing with bankruptcy matters Congress has paramount power. The U. S. Constitution provides under Article 1, Section 8 that:

> The Congress shall have Power... To establish ... uniform laws on the subject of Bankruptcies throughout the United States... And to make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers, and all other Powers vested by this Constitution in the Government of the United States, or in any Department or Officer thereof.

This case does not invoke a state statute but a federal Bankruptcy Act and it is not subject to the Contract Clause limitation.

It is subject to due process provisions. An attempt by Congress to achieve a public welfare purpose requires only a test of reasonableness, a lack of arbitrariness or capriciousness. Retroactivity is to be considered under this reasonableness test.

We hold that Congress was acting reasonably under its Bankruptcy power when it determined that a more modern bankruptcy law was required and established a scheme of exemptions, which it further protected by providing an ability to avoid the fixing of judicial liens which impaired these exemptions. The burden placed on the lien creditors whose priority is avoided by the debtor's assertion of this exemption is not so burdensome as to be an unreasonable exercise of the Bankruptcy power.

The cases examined do not lead us as a court in bankruptcy to find unconstitutionality. On these facts, that function remains to be done by an appellate court.

Trial courts are urged to resist declaring legislation unconstitutional. That burden is better carried on by the appellate courts. *In re Coller*, 8 F.Supp. 447 (E.D.Pa.1934); *Mather v. MacLaughlin*, 57 F.2d 223 (E.D. Pa.1932); *Bromley v. McCaughn*, 26 F.2d 380 (E.D.Pa.1928), aff'd per curiam, 36 F.2d 1019 (3rd Cir. 1929).

The Court in *Knox v. Lee*, 12 Wall. 457, 20 L.Ed. 287 (1871), stated:

A decent respect for a co-ordinate branch of the government demands that the judiciary should presume, until the contrary is clearly shown, that there has been no transgression of power by Congress.... Such has always been the rule .... It is incumbent, therefore, upon those who affirm the unconstitutionality of an act of Congress, to show clearly that it is in violation of the provisions of the Constitution. It is not sufficient for them that they succeed in raising a doubt. *Id.* at 531.

An appropriate Order will be entered.